PIKE *vs.* BUTLER and others.

The lessor of premises covenanted that if the lessee should erect a two story dwelling house, corresponding in elevation with a house already built on a part of the demised premises, the lessor, at the termination of the lease, would pay for the building so erected, at a valuation not to exceed $2500, to be made by appraisers to be appointed by the parties. The tenant erected a building on the demised premises which did not correspond, in height, with the dwelling house referred to, and was not finished inside for a dwelling house, but which was capable of being converted into one, in a few days' time and at a moderate expense. The lessor, although he had early and full knowledge of the character of the building which had been erected, never objected against it, to the lessee, nor by any act or intimation gave him to understand that he was dissatisfied with it, or that he should refuse to accept and pay for it. And upon the lessee's applying to him, some three months before the expiration of the lease, relative to appraising the value of the building, the lessor made no intimation that any question would be raised as to the lessee's right to be paid for the building as it stood; nor did he make any objection to the building until after appraisers had been appointed, and had met for the purpose of appraising its value, and when it was too late for the lessee to remedy the defects in the house before the expiration of the lease; *Held* that the lessor, as well by his

Pike *v.* Butler.

silence when he ought to have spoken, as by his express words and actions, had designedly misled and deceived the lessee in respect to the lessor's acceptance of, and intention to pay for, the building; and that he had thereby waived all objections, which he might have made to the same, on account of its varying from the terms of the lease.

*Held also* that the lessee could sustain a bill against the lessor, on that ground, so far as to place him in as good a condition as he would have been in, had he known the lessor's true designs at the time of the first deceitful conduct on his part. And a reference was directed, to ascertain the value of the building, for the purpose of being converted into a dwelling house, at the expiration of the lease.

IN EQUITY. This was an appeal by the plaintiff from a decree of the former assistant vice chancellor of the first circuit. The bill was filed by the assignee of a lease of premises at the corner of Broome and Mercer-streets, in the city of New-York, against the assignee of the lessor, to compel the defendant to pay the plaintiff the value of a brick building erected upon the premises by the plaintiff during the continuance of the lease. The facts will be found detailed in the opinion of the court. The cause was heard before the assistant vice chancellor upon pleadings and proofs, who made a decree directing the plaintiff's bill to be dismissed with costs.

*Charles O'Conor*, for the appellant. I. The defendant Jonas Butler, by Thomas C. Butler, his agent and attorney in fact, accepted the house which had been erected on the premises, as a sufficient compliance with the building clause in the lease, and waived any defects which may have existed therein. (1.) By letting the house before the expiration of the term, thereby signifying his satisfaction therewith and precluding any alteration which the complainant might have intended to make therein. (2.) By agreeing to a reference to appraise according to the lease, which presupposed a concession that such a house as the lease required had been built. II. The acts of the defendant Thomas C. Butler, for which the defendant Jonas Butler admits himself to be responsible, were fraudulently designed to throw the complainant off his guard, and prevent those measures by which his title to recover at law would have

---

*Pike v. Butler.*

---

been made perfect. In such a case equity will give relief, and preclude the party from taking advantage of the omission occasioned by his own acts. III. The defendant Thomas C. Butler, as chief actor in the fraud against which the complainant seeks relief, is a proper party, and should be charged jointly with the other defendant. IV. The complainant is entitled to a decree for the fair value of the house in question, to be ascertained by a master, together with his costs of suit; and the same should be declared to be a lien on the premises.

*E. Sandford*, for the respondents. I. The covenant contained in the lease by Mrs. Parcells, was never performed on the part of the lessee. The terms of the covenant are plain and explicit. They were wilfully disregarded by the lessee, and the plaintiff had no claim, legal or equitable, to compensation. II. A court of equity has jurisdiction to relieve against breaches of covenants in cases where by unavoidable accident, fraud or surprise, the party has been prevented from literally performing his covenant. In modern times courts of equity have been disposed to leave the parties to their legal remedy, upon the contract, and have disclaimed all authority to take liberties with the terms of the agreement. No case is made upon the pleadings and proofs, which will authorize the interference of a court of equity. III. The performance of the covenant on the part of the lessee was not waived. At the time of the erection of the building in question, the assent of the lessor to the violation of the agreement was not asked. If the lessor saw the departure from the terms of the covenant, he had no right to interfere with it. Much less was he bound to speak. The subsequent acts do not amount to any waiver of performance, nor create any obligation to pay for the building in question. IV. The objection stated in the answers of the defendants, to the frame of the bill, and to the jurisdiction of a court of equity, are well taken. V. The covenant to pay for the building to be erected, is not a covenant running with the land. Jonas Butler is not bound by it. VI. The decree appealed from was correct, and should be affirmed with costs.

Pike v. Butler.

*By the Court*, HURLBUT, P. J.    The lessor of the premises, referred to in the bill of complaint, covenanted that if the lessee should erect a two story dwelling house corresponding in elevation with a dwelling already built on a part of the demised premises, the lessor, at the termination of the lease, would pay for the building so erected, at a valuation not to exceed $2500, to be made by two appraisers, one to be selected by each party, with power in case of disagreement, to select a third appraiser, and that the award of any two of them should be final.    The tenant erected a building on the demised premises which did not correspond in height with the dwelling house referred to, and was not finished inside for a dwelling house, but which was capable of being converted into one of the description in the lease, in a few days' time and at a moderate expense.    It is apparent from the case that the defendants had early and full knowledge of the character of the building which had been erected, and that neither of them had ever objected against it, to the plaintiff, or by any act or intimation given him to understand that they were dissatisfied with it, or that they should refuse to accept and pay for it.    It appears, moreover, that the plaintiff, as early as January or the first of February, 1843, some three months before the expiration of the lease, called the attention of Mr. Thomas C. Butler (whose acts were all consented to and adopted by the other defendant) to the subject of appraising the value of the building in question; that they had several interviews on the subject, and that on none of these occasions did Mr. Butler intimate to the plaintiff that any question would be raised as to his right to be paid for the building as it stood.    The plaintiff alleges that when he applied to Mr. Thomas C. Butler, in February, 1843, he offered to nominate one appraiser, and requested Mr. Butler to select another, to place a valuation on the building in question; that Mr. Butler admitted the propriety of this application, and professed a willingness to name an appraiser; and that about the 20th of April, he selected Theophilus Peck, and the plaintiff selected Peter J. Bogart, to act as appraisers.

The answer of Mr. Thomas C. Butler admits that the plain-

Pike *v.* Butler.

tiff called on him about the 1st of February, 1843, and suggest-
ed that it might as well be left *to arbitrators, according to the
lease,* (an expression of singular efficacy in the estimation of Mr.
Butler,) to decide between them at an early period, as to leave
it until the lease terminated; and that the plaintiff requested
permission to retain the quarter's rent then due, on account of
his improvements, which request, Mr. Butler says he promptly
refused to comply with; but did not as promptly, nor indeed
at all, inform the plaintiff that he would not allow him to retain
the rent, because the building did not conform to the descrip-
tion in the lease.    The answer further states that on the 2d of
March the plaintiff again applied to have *arbitrators* chosen,
and Mr. Thomas C. Butler expressed his readiness, whenever
the plaintiff should be prepared to act; that late in April, the
plaintiff called again, and they then fixed the time and place
for the arbitrators to meet.    Now the answer does not pretend
*that at any of* these interviews with the plaintiff, Mr. Thomas
C. Butler gave him the slightest hint that there was any objec-
tion to the building, or to its value being appraised and paid
for.    Mr. Butler knew that the plaintiff was seeking an appraisal
with a view to being paid; that he had reason to expect pay
for an improvement against which no objection had ever been
made, which appeared to be satisfactory to the landlord of the
premises, and was in itself as advantageous as any other mode
of improving the property; and Mr. Butler had himself heard
the plaintiff claim to retain a quarter's rent in part payment of
the anticipated valuation of the building in question; and he
must have understood the views of the plaintiff, and known
that he considered that the only question between them was,
what amount he was to receive for the building as it stood on
the premises.    Here was a fine opportunity for Mr. Thomas C.
Butler openly and fairly to have expressed the views and set
forth the argument, which he presented with great clearness
and effect to the appraisers, on a subsequent occasion, by a letter
addressed privately to them.    Yet Mr. Butler did not improve
this opportunity, but remained silent as to any objections; al-
lowed the plaintiff to select an appraiser to act strictly as such;

and himself selected a person, whom he is careful now to call arbitrator, without ever having informed the plaintiff of the distinction which he would have us believe he kept in his own mind, between the powers of the appraiser and the arbitrator. Mr. Butler did not seem to know that an appraiser, by any other name, was just as efficient; and that if he spoke the word "arbitrator" to the plaintiff, intending that the latter should understand by it, an appraiser, and he did so understand it, that the law would carry out the intention of Mr. Butler, as it does of all honest men, and consider that he chose an appraiser *as he intended to be understood.* The two gentlemen selected by the parties met about the 21st of April. Mr. Thomas C. Butler and the plaintiff were present with them ; and the former maintained an impressive silence on the subject of the non-conformity of the building to the description in the lease. From his declarations and conduct, Mr. Bogart was led to suppose that his only business was to estimate the value of the building ; and even Mr. Peck was not otherwise informed, on that occasion. Mr. Butler says, " that he appeared there with Mr. Theophilus Peck as arbitrator on his part, ready to arbitrate with the plaintiff, as to the question whether the lessee had fully complied with the clause in the lease respecting the erection of the building, *and if so,* to value the same according to the intent of the lease." But he stated no such purpose at the time. This admirable definition of his intentions, and of the functions of his chosen man, was kept a profound secret from the plaintiff and the appraisers. The plaintiff asked him, (as he says,) what were the powers of the arbitrators? To which inquiry he states that he distinctly replied, that they were to decide between the parties according to the terms of the lease, and that it was necessary the lease should be read. Now although Mr. Thomas C. Butler entertained the purpose and intention before stated, yet he was so unfortunate in his mode of expression as to employ the language just given, which nobody appears to have heard, or if otherwise, which left upon the minds of gentlemen chosen between the parties, the impression that they had nothing to do but to appraise the value of the build-

ing. Indeed it seems hardly possible to suppose that they were called there to determine whether the building in question was a two story dwelling house. The case betrays too much intelligence on the part of all concerned in this transaction to admit of such a supposition for a moment. Mr. Butler adds, in his answer, that the lease was read in order that the arbitrators' attention might be particularly directed to the agreement of the new building with the description required by the lease. Did he say so at the time? Did he explain his motives in having the lease read to the arbitrators? Not at all. His too great modesty on this occasion, divested this portion of the transaction of a very interesting feature; a declaration of his purpose and intention to the parties concerned. The answer, at this place, requires to be carefully read, in order to form a true estimate of the ingenuousnes of Mr. Butler, as well on the occasion referred to, as at the time of verifying this statement.

The answer at length admits, that never before April 27, 1843, did Mr. Thomas C. Butler intimate any objection to the construction of the building, and submits that he was not bound to make any. And it appears to us not only that he made no objection, but that he studiously abstained from any act or expression which could lead the plaintiff to doubt, that he intended to pay for the building at a fair valuation. But on the 27th of April, when the appraisers met to complete their appraisal—one of them having gone to the place of meeting with his estimate made—when the plaintiff was absent—and when it was not expected that the parties would be present, or that any new fact would be presented or new position taken—there was found in the hands of Mr. Peck, a paper written by Mr. Thomas C. Butler, and addressed to the appraisers, which very plainly showed that during these years of guarded silence, and these weeks of active endeavor, to effect an appraisal of the building in question, he had throughout entertained, and still adhered to, the opinion, that the plaintiff ought to have nothing whatever for the building, because it did not conform in any respect to the description required; and it appeared from this letter, that these views were mature, ripe, and well consid-

Pike. *v.* Butler.

ered, not having the least appearance of an after-thought. The views and reasons of Mr. Thomas C. Butler, thus secretly made known to the persons addressed by him, and now for the first time exhibited, induced them to believe that the parties did not understand each other, and that an appraisal could not proceed without further instructions. And thereupon the plaintiff's appraiser and the defendants' arbitrator separated, to meet no more. Before this event, and as early as the 14th of February, 1843, and after the plaintiff had applied for an appraisal, Mr. Butler had leased the premises for five years, for a rent about equal to the rent of such a dwelling house as described in the covenant in the lease. Now it seems to the court that Mr. Thomas C. Butler, as well by his silence, when he ought to have spoken, as by his express words and actions, has designedly misled and deceived the plaintiff, in respect to the defendants' acceptance of, and intention to pay for the building in question; and that the plaintiff's bill can be supported on this ground, so far as to place him in as good a condition as he would have been, if he had known the defendants' true designs at the time of the first deceitful conduct in the premises, which was as early, at least, as the first of March, 1843. The proof shows that at this time the building was capable of being converted into a dwelling house of the description required, and that there was ample time to accomplish it. If at this time, Mr. Thomas C. Butler had expressed his views and intentions with common fairness, and they had been such as he delivered to the appraisers on the 27th of April, the plaintiff would have been put upon his guard, and might have made, and it being for his interest, we will intend that he would have made, such modifications in the building as would have entitled him to recover on the covenant in the lease. But when Mr. Butler's first declaration of his real designs was made, it was too late altogether for the plaintiff to put himself in this position; and it appears to us that the whole conduct of Mr. Butler was intended to delude the plaintiff, and keep him from doing what would have enabled him to recover under the lease, until it should be too late for him to act.

Pike *v*. Butler.

Now it must not be permitted that the defendants shall gain, or that the plaintiff shall lose, any thing, by reason of this deception. And it is the duty of the court to interpose and restore the parties to the positions which they respectively occupied about the first of March, 1843. It is said, that at this time the plaintiff could not have reformed the building so as to have made it available to him under the covenant, because he had neither the possession nor the right to the possession of the premises, having leased them for the whole term. The defendants are not in a position to urge this objection, after having, by insincere and false dealing, deprived the plaintiff of the opportunity of making an attempt to gain the possession of the premises. As against them, it is a good answer to say, that there is no evidence but that the tenant would have surrendered to the plaintiff, so far as to have enabled him to finish the building; and we cannot intend the contrary for the purpose of saving the defendants from the consequences of a fraud. It is not unreasonable to suppose, nor for the law to presume, in the absence of all proof, that the premises could have been had for a reasonable rent, for the time required to complete the improvement.

But it is said, in effect, that the plaintiff has done in iquity, and is not therefore entitled to relief; that he wilfully departed from the terms of the lease, erected a building which he knew would not be paid for, and that he has therefore no equity. In reference to this objection, it is to be considered, that he had the whole term in which to erect the dwelling house, and if he had built a one story house at first, and added the second story on the last day of the term, so that at that time the house conformed to the description in the covenant, we see no reason why he would not have been entitled to recover for it. So he might have removed the attic story from the present building, and finished it for a dwelling house, and delivered it at the end of the term, and thus entitled himself to recover under the covenant. There was then on the first of March, 1843, no such departure from the contract between the parties, as the law can recognize; for we are referred to the end of the term to see

what form the building shall then assume, and if then found to be conformable to covenant, it is enough. The lessee did not covenant to build; but if he completed a dwelling house of a certain height, he was to be paid for it at the end of the term. We are unable to perceive how it can be said that he has wilfully done a wrongful act in erecting the building which he did. But the case does not warrant the defendants in taking the ground of objection to the relief sought by the bill; since, knowing all about this building, they had never raised the slightest objection to it, but had apparently acquiesced in its being on the demised premises, with entire satisfaction, until the 27th of April, 1843, three days before the expiration of the lease, when it was too late for the plaintiff to alter it. Moreover, the difference in structure then for the first time complained of, has not apparently resulted to the injury of the landlord of the demised premises. The present building appears to rent for about as much as a two story dwelling house; and there is some evidence to show that the former is the most advantageous building of the two, for the owner to have on his land. Besides, it appears that the defendants, before the expiration of the plaintiff's term, rented the building in question for five years, to the former tenant, without manifesting the least intention to convert it into a two story dwelling house, but accepted, and now enjoy the advantage of this building, in very much the same manner, as they would have done, if it had been in all respects satisfactory to them, from the beginning. Under these circumstances, they cannot expect that much weight will be given to the objection that the plaintiff wilfully departed from the building clause in the lease.

On the whole, we consider that the decree of the assistant vice chancellor ought to be reversed, and that there should be a reference to ascertain the value of the building in question, on the first of May, 1843, for the purpose of being converted into a dwelling house, which value the defendants ought to be decreed to pay with interest, and the costs of this suit, and the amount should be decreed to be a lien on the demised premises.

Decree accordingly.