## BOUTWELL *vs.* O'KEEFE and BOYLE.

A contract void by the statute of frauds, is capable of becoming valid and obligatory by subsequent part performance.

Where there are subsequent transactions between the parties to a void contract, which are not only in apparent conformity to the terms of such contract, but in actual execution of it—done *under* the contract—the contract originally void becomes valid and obligatory upon the parties, and they cannot successfully resist its enforcement.

Where the plaintiff entered into a parol agreement with the defendants, to furnish them with all the meal they wanted, at stipulated prices, payable partly in cash, partly in rail road stock, and partly in rail road bonds; and he subsequently delivered meal to the defendants, at various times, under the contract, and received from them some cash payments, but no stock or bonds were issued to him, and he waived the delivery thereof, and agreed to accept certain requisitions from the chief engineer, upon the rail road company, instead; and he never recalled such waiver, until after he had himself broken the contract; *Held,* in an action by the plaintiff to recover a balance due to him for the meal delivered, that the defendants were entitled to recoup their damages for the failure of the plaintiff to deliver the meal, when required to do so.

*Held also,* that the defendants could not be deemed guilty of a breach of the contract, in failing to furnish the stock and bonds according to the agreement, without proof that they were requested to furnish the stock and bonds, after the plaintiff had agreed to accept the requisitions in lieu thereof, or that the latter agreement or consent had been suspended, or withdrawn, by the plaintiff.

*Held further,* that in order to put the defendants in fault for refusing to furnish the stock and bonds, upon demand made, the demand should have been made sufficiently long before the suit was commenced, to enable them to comply with it.

ON or about the 1st of June, 1851, the defendants, being contractors for work both upon the Troy and Bennington rail road, and also the Harlem rail road, an agreement was made between the plaintiff and defendants, by which the former was to furnish to the latter *all the meal they wanted for their works,* at stipulated prices, for which he was to be paid *monthly;* one half in cash, one quarter in the stock of the Troy and Bennington Rail Road Company, and one quarter in the bonds of the same company, with a guaranty of the Troy and Boston Rail Road Company that the stock and

Boutwell *v.* O'Keefe.

bonds should pay six per cent. The meal for the Harlem works was to be delivered at the boats, free of charge, and the meal for the Troy and Bennington works to be delivered at the works for *eighteen pence* per hundred, to be paid in the same manner as the meal. The agreement was not in writing; but in July following, the plaintiff delivered meal, which the witness testified and the referee found was delivered *under the contract,* to the amount of $183.04, on account of which in August he received from the defendants a cash payment of $100. No stock or bonds of the company had then been issued, but the defendants had *requisitions* from the chief engineer upon the company, which had been accepted by the treasurer, for such stock and bonds, which, when issued, would bear date and draw interest from the date of the requisitions. The plaintiff requested the defendants to retain the requisitions until the stock and bonds were issued, and then to hand the latter to him. In August, 1851, the plaintiff delivered meal to the amount of $431.91, the cash payment on account of which was made by the defendants. This payment was $207.47, and was made in September, 1851. The defendants again offered the plaintiff the requisitions for the stock and bonds. The plaintiff expressed some dissatisfaction with the tardiness of the company in issuing their stock and bonds, but did not make a demand for them. In Sept. 1851, the plaintiff delivered meal to the amount of $565.50, and was paid in cash the sum of $282.75, in October, 1851. In October, 1851, the plaintiff delivered meal to the amount of $270.98, for which no payment seems to have been made, and none demanded till about the time of the commencement of this suit. The defendants afterwards repeatedly ordered more meal, and the plaintiff promised to deliver it, but did not do so. Several interviews took place between the parties in reference thereto. Evidence was received by the referee, subject to objection, of damages sustained by the defendants by the non-delivery of the meal ordered by them, but the referee finally decided that the defendants were not

entitled to set off or recoup their damages, and the defendants excepted.

On the 3d of December, 1851, this action was commenced, to recover the balance due to the plaintiff, on account of the meal delivered. There was testimony in the case tending to show, although the referee has not found the fact, that on the day the suit was commenced, the plaintiff demanded of the defendants the stock and bonds, and that they refused to deliver them, claiming that the plaintiff had broken the contract, and that the defendants had sustained damages thereby. They said they would furnish the stock and bonds if the plaintiff would fulfill the contract on his part. The plaintiff simultaneously said that he would fulfill the contract satisfactorily if the defendants would. They were at issue on this point, and no further offer or tender was made.

The defendants in their answer set up the contract and its breach, by way of defense, and claimed to recoup in damages for its non-performance by the plaintiff. The cause was referred to J. Romeyn, Esquire, as referee, who, on the 21st of June, 1858, reported that there was due to the plaintiff, upon the account mentioned in the complaint, the sum of $661.62, to which he added interest, making $964.94, for which sum, with costs, judgment was perfected on the 25th day of June, 1858; and the defendants appealed therefrom to the general term.

The referee having found the facts substantially as above stated, found as conclusions of law therefrom, 1. That the contract was severable, and an entire performance by the plaintiff was not a condition precedent to the liability of the defendants. The defendants excepted. 2. That the original contract was void by the statute of frauds, and that each delivery of meal *under it* became a separate and distinct transaction. The defendants excepted. 3. That the plaintiff having duly performed the principal part of his undertaking, the benefit of which the defendants had received and retain, the mutual agreement of the parties would be deemed

independent. The defendants excepted. 4. That the failure of the defendants to furnish the stock and bonds according to the contract was a breach, and justified the plaintiff in his neglect further to perform. That although the plaintiff may have waived the breach, the waiver was temporary, and that he might at any time require payment of the stock and bonds properly guarantied. That upon every delivery of meal there was a renewed breach. The defendants excepted. 5. That the defendants were not entitled either to a set-off or to recoup any damages. The defendants excepted.

The defendants also excepted to the report made in favor of the plaintiff, and to each and every part thereof, and to each and every of the several findings of fact and conclusions of law found by the referee.

*Ira Harris*, for the defendants.

*W. A. Beach*, for the plaintiff.

HOGEBOOM, J. The parol contract between the parties, for the sale and purchase of the meal, as originally made, was absolutely void by the statute of frauds. But since the case of *McKnight* v. *Dunlop*, (1 *Seld.* 537,) it can no longer be contended that it was incapable of becoming valid and obligatory by subsequent part performance; or that subsequent deliveries of articles, from time to time, in execution of the contract, are to be regarded as separate and distinct transactions, or as so many separate and independent contracts. The latter would seem to be the rule, as held by the superior court of New York, (*Seymour* v. *Davis*, 2 *Sandf. S. Court Rep.* 239 ; *Deming* v. *Kemp*, 4 *id.* 147;) but it is not the rule in this court, or in the court of appeals. (*Sprague* v. *Blake*, 20 *Wend.* 61. *Baker* v. *Cuyler*, 12 *Barb.* 667. *McKnight* v. *Dunlop*, 1 *Selden*, 537.) Perhaps the conflict between the courts is rather apparent than real, and turns on a question

of fact, rather than of law. The superior court holds, as I understand it, that the subsequent transactions or delivery of articles, though of the character and description of those mentioned in the void parol contract, are not to be *presumed* to be under or in execution of the original contract, but, in the absence of explanation, independent transactions. However that may be, it is clear by the rule laid down in the court of appeals, that if the subsequent transactions are not only in apparent conformity to the terms of the original contract, but in actual execution of it—done *under* the contract—the contract originally void becomes valid and obligatory upon the parties, and they cannot successfully resist its enforcement. In this case the referee has found, as a matter of fact, that " the plaintiff went on and delivered meal *under the said contract;*" and he proceeds to specify the particulars. The contract therefore became thereby valid and operative between the parties.

I am not able to discover that it was subsequently broken by the defendants ; at least not until after it had been broken by the plaintiff. The plaintiff was undoubtedly entitled to require the guarantied stock and bonds, but he *waived* them, and agreed to accept the requisitions instead, and in fact, in the language of the referee, " desired the defendants to keep the requisitions, and as soon as they could get the stock and bonds, to hand them to him." After that time he never, so far as I can see, recalled this waiver, or demanded the stock and bonds, until the very day and almost at the very moment of commencing this action. At the latter period, he had himself broken the contract, by repeated neglects or refusals to deliver meal when ordered by the defendants. Thus far, the defendants had performed the contract, for they held the requisitions subject to the order of the plaintiff and at his request. They were therefore entitled, in this action, to recoup their damages for the failure of the plaintiff to deliver the meal when ordered. The referee therefore erred in deciding against the defendants on this point; and for this

reason, if r other, a new trial must be awarded. The referee in his conclusions of *law* has decided that the defendants were guilty of a breach of the contract in failing to furnish the stock and bonds according to the contract, and that this justified the plaintiff in his neglect further to perform. But he has failed to find, as a matter of *fact*, what is essential to support his conclusion of *law*, to wit, that the defendants were ever requested to furnish the stock and bonds after the plaintiff had agreed to accept the requisitions in lieu thereof, or that this latter agreement or consent had ever been suspended or withdrawn by the plaintiff. The referee intimates that the plaintiff may have waived the breach of the contract. It would have been more correct to say that he had in fact waived the furnishing of the stock and bonds. The referee says the waiver was temporary. The fact is, the waiver had never (until just as the suit was about to be commenced,) been recalled. Very probably the requisitions were intended only as a temporary substitute for the stock and bonds, but they remained a valid substitute until the plaintiff chose to terminate that condition of things by a distinct demand of the stock and bonds. This demand was made just as the suit was about to be commenced. It was not made sufficiently long before the commencement of the action to enable the defendants to comply with it; and that would have been a good defense to the action, if the defendants had put themselves upon that ground at the time.

Whether the first breach of the contract by the plaintiff put it out of his power to exact an enforcement of it from the defendants until he had filled the orders of the defendants, or had offered to supply their orders for the future, it is not necessary perhaps to inquire; as there must be a new trial granted for the erroneous disallowance of the defendants' damages for the plaintiff's breach of the contract.

The judgment entered upon the report of the referee must be reversed, and a new trial granted, with costs to abide the event of the action.

GOULD, J. I do not see how the referee's fourth finding of *law* can be read otherwise than as based on the *facts*, that the defendants *neglected* and *refused* to furnish the stock and bonds when called for; and *therefore* they were guilty of the *first breach.* This would *sustain* the report. But I do not see that the findings of *fact* cover this ground.

Therefore I concur in the opinion above.

New trial granted.

[ALBANY GENERAL TERM, May 7, 1860. *Gould, Hogeboom* and *Peckham*, Justices.]