## WILLIAM BARTON v. EDGAR L. GRAY.

*Insufficiency of charge to jury—Variance—Estoppel from denying performance—Parol changes in written contracts—Seal—Statute of frauds—Waiver—Mistrial.*

1. Error cannot be assigned upon an exception to the sufficiency of a charge to cover the substantial issues of the case upon particular points of law if the charge as given did in fact cover all branches of injury under the issues made by the pleadings, and if no special request was made for more specific instructions.

2. A trial judge, in charging the jury, should present the substantial issues of the case and state the principles of law that govern the rights of the parties; and this should be done whether any specific instructions are requested or not.

3. A declaration on a contract averred performance for five years and defendant's refusal at the end of that time to permit farther work. The proofs showed performance for three years and then a postpone-

ment at defendant's request, after which defendant discharged the plaintiff. *Held*, that the question of variance could not be raised for the first time after all the evidence had been submitted and the jury instructed on the basis of it.

4. Evidence, in an action on a contract, of the temporary postponement of its performance at the request of defendant, but without any contract therefor, is relevant to show that defendant was estopped from denying performance during that time.

5. The court is to construe verbal as well as written contracts after a jury has determined what were the terms orally agreed upon. And his instructions as to the legal effect of a contract must necessarily be based upon assumed facts, the existence of which the jury is to pass upon.

6. The Statute of Frauds does not apply to contracts the terms of which are such as to leave it uncertain whether they may or may not be performed within a year.

7. A seal is of no practical importance in Michigan except where the statutes require it.

8. A contract, the nature of which is such that it need not be in writing, can be varied by parol, if the parol argreement is valid and based on a consideration. But a parol agreement, which by its terms could not be executed within one year, would be void under the Statute of Frauds, and being nudum pactum would not affect the original agreement.

9. One cannot complain of an injury resulting from conduct to which he has consented.

10. One who has caused or sanctioned the breach of an agreement cannot recover damages for its non-performance or set it up in defense to an action on the contract.

11. An appellate court cannot consider an assignment as error that the jury had found for plaintiff, or that their finding was against the weight of evidence.

12. An assignment of error will not be considered if not based on an exception.

13. The objection that on a former trial plaintiff elected to go to trial upon a different count is waived if not raised until after verdict.

14. Waiver of performance, or extension of the time therefor, in the case of a condition precedent, is equivalent to the performance thereof at the stipulated time and leaves the original contract intact.

15. Mistrial does not occur where plaintiff elects to rely on a particular count after evidence has been submitted if the proofs received are relevant to the count chosen, and if the others are not so inconsistent

with it that the jury can be substantially misled by their averments and render a general verdict. Such a verdict may be applied to the count elected, and if desired, the record may be amended accordingly.

16. The Statute of Amendments protects a judgment after verdict where, although an averment in the declaration was dropped by the aban. donment of the counts containing it, both sides went fully into proofs relating to it, without objection, and it was apparent that the defense was not misled.

17. Judgment will not be reversed for a variance which could not have prejudiced the defendant.

Error to Newaygo. (Montgomery, J.) May 13.—Sept. 29.

Assumpsit. Defendant brings error. Affirmed.

*E. L. Gray* in person, *George Luton* and *L. D. Norris* for appellant. If a declaration contains two or more counts, and one of them is bad (out of the case), so that it would not sustain a verdict upon it, and a general verdict is rendered on the whole declaration, the verdict is bad, and the defendant may take advantage of it, either by a motion in arrest of judgment or on error: *Hopkins v. Beedle* 1 Cai. 349; *Cheetham v. Tillotson* 5 Johns. 430; *Backus v. Richardson* 5 Johns. 475; *Richmond v. Whittlesey* 2 Allen 234; a verdict, being an entirety, cannot be set aside as to one count and retained as to another: *Frye v. Moor* 53 Me. 583; *York v. Johnson* 116 Mass. 485; *Weirick v. Hoover* 8 Blackf. 380. *Cummings v. Arnold* 3 Met. 486 holds that the terms of a contract within the Statute of Frauds may be varied by a subsequent parol agreement prior to any breach of the original; in *Colt v. Miller* 10 Cush. 49, a declaration that the plaintiff had performed his part of a mutual executory agreement, it was held was not supported by proof that the defendant had waived such performance: *Baker v. Fuller* 21 Pick. 322; *Pomroy v. Gold* 2 Met. 500; under a sole averment as condition precedent to recovery, of full performance of a contract, you cannot show waiver of such performance; *Kroll v. Ten Eyck's Estate* 48 Mich. 232; *Martin v. Boyce* 49 Mich. 122; *Shafer v. Wiseman* 47 Mich. 63; in *Gunn v. Geary* 44 Mich. 616, the variance was declared, among other things, because it affected the measure or rule of damages; an averment of full performance of contract, until discharged, is not suppported by proof of performance for a time, then an agreement waiving performance from year to year for two years, and then discharge: *Colt v. Miller* 10 Cush. 51;

*Palmer v. Sawyer* 114 Mass. 14; *Baldwin v. Munn* 2 Wend. 399; *Oakley v. Morton* 11 N. Y. 30; *Holmes v. Holmes* 9 N. Y. 528.

*A. G. Day* and *James Barton* for appellee. Where one party to a contract to cut timber refuses to let the other finish the work agreed on, and either before being sued upon the contract or on the trial, pleads the Statute of Frauds, the plaintiff has a right to fall back upon the breach of the contract that occurred before the parol extension: *Scott v. Bush* 26 Mich. 241; Chitty on Contracts 814; *Wilson v. Wagar* 26 Mich. 452; Brown on Statute of Frauds § 131; *Walker v. Millard* 29 N. Y. 375; *McQueen v. Gamble* 33 Mich. 344; *Exp. Co. v. Kountze* 8 Wal. 342; as to the presumption that parties always contract with reference to the usual and known methods of doing business: *Gregory v. Wendell* 39 Mich. 337; *Merick v. McNally* 26 Mich. 374; the land from which the timber is to be taken need not be specifically described in the contract if it is referred as all upon certain specified sections that is owned by the other party, and evidence is admissible to show what it is: *Nichols v. Johnson* 10 Conn. 198; *Atwood v. Cobb* 16 Pick. 227; *Brinkerhoff v. Olp* 1 Am. Law Reg. (N. S.) 309; *Tallman v. Franklin* 14 N. Y. 584; *Hurley v. Brown* 98 Mass. 545; *Bateman v. Phillips* 15 East. 272; 1 Greenl. Ev. §§ 287, 288; *Treat v. Strickland* 23 Me. 234: 13 Am. Law Reg. 391; a contract which absolutely binds one party to cut timber leaves a corresponding obligation on the other to let him do it: *Appleby v. Meyers* 6 Am. Law Reg. (N. S.) 112; *Emmens v. Elderton* 4 H. L. C. 624; *Elderton v. Emmens* 6 C. B. 160; *Reg. v. Welch* 22 L. J. M. C. 145; *Pilkington v. Scott* 15 M. & W. 657; if it was impossible for the latter to procure the consent of his co-tenants, he should have guarded against such a contingency: Chitty on Contracts 803; *McCreery v. Green* 38 Mich. 172; *Jervis v. Tomkinson* 1 H. & N. 195; *Marquis of Bute v. Thompson* 13 M. & W. 487; *Hadley v. Clarke* 8 T. R. 259; *Oakley v. Morton* 11 N. Y. 25; *Harmony v. Bingham* 12 N. Y. 107; *Lord v. Wheeler* 1 Gray 282; *School Dist. No. 1 v. Dauchy* 25 Conn. 530.

CHAMPLIN, J. This case was before this Court in the April term, 1882, and is reported in 48 Mich. 164. The declaration as originally filed contained three special counts, and the common counts in assumpsit. The second and third special

counts and the common counts were abandoned on the trial, and the plaintiff elected to rely entirely for a right of recovery upon the first special count of his declaration. This announcement was made after the plaintiff had introduced his evidence, and after one witness had been examined on behalf of defendant. There was no formal entry of discontinuance as to the two special and the common counts, and no formal amendments to the declaration filed. The trial proceeded and concluded upon the announcement and election made by counsel for plaintiff in open court, and resulted in a general verdict for the plaintiff, upon which judgment was rendered.

The record is brought to this Court upon a case made after judgment. The errors assigned are based upon a variance between the proofs and the first count of the declaration, and in the charge of the court to the jury respecting the application of the statute of frauds to the facts of the case, the measure of damages, and the subsequent action of the court in restricting and applying the verdict of the jury to the first count of the declaration. The first count of the declaration set forth an agreement in writing entered into between the parties, and dated August 31, 1872, as follows:

"Agreement made and concluded this thirty-first day of August, 1872, between Edgar L. Gray, of Newaygo, Michigan, party of the first part, and William Barton, of the town of Big Prairie, and State aforesaid, party of the second part, witnesseth: That the said William Barton, party of the second part, for the consideration hereinafter mentioned to be performed by the said party of the first part, does hereby covenant and agree with said Gray as follows, to wit: To cut, haul, deliver, and float two hundred and fifty thousand feet, board measure, of good, sound, merchantable pine sawlogs, in the south branch of the Pere Marquette river; said logs to be cut from off the undivided one-half of southwest one-quarter of northwest one-quarter, and west one-half of southwest one-quarter, section 13, town fifteen north, range fourteen west, and so put afloat in said stream on or before the first day of November next, and, if sufficient water for that purpose, to run said logs during said month of November to the junction of said stream with the Beaver creek, on

section 11 in the town aforesaid, with an ample force, and as soon after the first day of said month of November as the same can be done.

*Secondly.* To cut, haul, and deliver afloat in said first-mentioned stream the balance of the timber on the land above described, cut up into saw-logs of the kind and quality first above described, and run the same into the main river below the junction of Beaver creek and said first mentioned stream, with an ample force of men, as early in the spring of 1873 as the water will permit it to be done.

*Thirdly.* To cut, haul, and deliver afloat all logs that can be cut from off of the northeast one-quarter of southeast one-quarter of section fourteen, town fifteen north, range fourteen west, that are sound and merchantable, and from timber that is now down, and on the east side of said first mentioned stream, and run the same out into the main river below the junction of said stream with an ample force of men, as early in the spring of 1873 as the water will permit it to be done.

*Fourthly.* To cut, haul, and deliver all logs that can be cut from timber, now down and within forty rods of Beaver creek, and on sections fourteen and fifteen, and put afloat in said creek on or before the time for driving logs, in the spring of 1873.

*Fifthly.* To cut, haul, and deliver afloat all logs that can be cut from off of the undivided one-half of south one-half of southeast one-quarter, and southeast one-quarter of southwest one-quarter, section ten, town fifteen north, range fourteen west, and the whole of the north one-half of southeast one-quarter of section ten, town fifteen north, range fourteen west, in the main south branch of Pere Marquette river, and below its junction with the Beaver creek on or before the time for driving said logs, in the spring of 1873.

*Sixthly.* To cut, haul, and deliver afloat in said streams all the logs that can be cut from off of said section fourteen and section fifteen, in the town aforesaid, at the rate of two million feet, board measure, every winter, and as much more as said Gray and the other owners of said timber shall desire. All logs to be long butted, when necessary, and are to be free from butt-shakes, and to be otherwise free from ring-rot, or any other defects which would render the same unmerchantable in quality. No logs cut from off of said lands on said section thirteen to scale less than twelve inches in diameter at the small end, scaling measurement, and the balance of the timber to be cut as aforesaid to scale not less

than ten inches in diameter at the small end, and deductions to be made in all crooked logs so as to make them straight, to be measured or scaled by a competent person that may be selected by the said parties to this contract, and in accordance with Scribner's scale; said Barton to board the scaler and his wages to be borne mutually by the parties hereto. All logs to be well and properly cut, and of the lengths directed by party of the first part provided said lengths shall not exceed 22 feet, all logs to be plainly marked with the recorded mark of the party of the first part, and the side mark of party of first part to be plainly cut with an ax on both sides of the log, near the top end, and all logs scaled and marked with the side and end mark of said first party, and left on the bank, skidways or in the woods are to be paid for only when they shall be delivered afloat as aforesaid, and if they have depreciated in value by such neglect of said Barton he shall pay said Gray the amount of such depreciation. All damages to logs in putting down railways or slides to be made good by said party of the second part. It is also understood and agreed between the parties hereto that in case of failure to put said logs in said streams, and put the same afloat in time for the main drive at the time hereinbefore stated, then the said party of the second part is to drive the said logs free of all expense to the party of the first part, until the main drive be reached; and all logs so cut, scaled, marked and delivered afloat, and at the points as hereinbefore provided, are to be removed by the said party of the first part, and to be paid for at the following rates:

For all logs taken from off of said lands on said section 10, and delivered afloat as aforesaid, at the rate of two dollars and seventy-five cents per thousand feet, board measure. For all logs taken from timber on said section 13 and down timber on n. e. $\frac{1}{4}$ of s. e. $\frac{1}{4}$ of said section 14 and delivered afloat in the main south branch of the Pere Marquette River, as aforesaid, the sum of four dollars per thousand feet, board measure. For all the balance of pine timber on section 14 and 15 in the town aforesaid, of which said Gray is part or sole owner, cut up into saw logs and delivered afloat in either of said streams, the sum of two dollars and fifty cents per thousand feet, board measure.

The said party of the first part agrees to pay to said Barton, for logs to be delivered as aforesaid, one thousand dollars on or before the twentieth day of September, one thousand dollars on or before the first day of November

next, and then the amount of one dollar and twenty-five cents per thousand feet on the fifteenth day of each of the months of January, February, and March, 1873, as fast as the logs cut from off of said section 10 are scaled and delivered afloat as aforesaid, and the balance of said price of fifty cents per thousand feet, board measure, on the first day of July, 1873, and also the amount of two dollars per thousand feet on the fifteenth day of each of the months of January, February, and March, 1873, for logs cut from off of said lands on said sections 13 and 14, and run as aforesaid, and the balance on or before the first day of August next. The said William Barton also agrees to proceed next week with a sufficient force of men and teams to clear said south branch of Pere Marquette River from east line of said land on section 13, aforesaid, to its junction with Beaver creek, and have it well cleared for the running of logs within thirty days from date. All logs put in by said Barton, in either of the streams aforesaid, in any winter succeeding the coming one, and put afloat in said streams, said Gray is to pay for at the rate of two dollars and fifty cents per thousand feet, board measure, for his share of said logs, and as fast as said work progresses. If required by said Gray, said Barton is to secure said Gray for advances, and not to sub-let his contract, and any substantial non-compliance by said Barton of the agreement by him made shall make a forfeiture of the same at the option of said Gray.

In witness whereof, the parties to this contract have hereunto set their hands and seals, the day and year first above written.

EDGAR L. GRAY, (L. S.)<br>
WM. BARTON." (L. S.)

Then the declaration alleges the mutual promise of performance of the contract by the parties; and then alleges that the defendant was the owner in fee of the undivided half of the lands described as being upon sections 14 and 15, mentioned in the contract, and [that it] is the same land and timber referred to in paragraph 6 of said agreement; that he entered upon the performance of the contract and performed all the work and labor mentioned in the contract by him to be performed, to wit, for the space of five years then next following, and was always ready, willing and able to perform fully and in all things the said contract on his part to be

performed; yet the defendant, before the pine timber on sections 14 and 15 had all been hauled and delivered afloat in the streams, "and while a large quantity of pine timber, to wit, eight million feet, board measure, of pine timber still remained uncut, to wit, on the first day of December, 1877," wrongfully and injuriously discharged the plaintiff from the performance of such agreement, and the said promises and undertakings by him to be performed, and hindered and prevented the said plaintiff from the performance thereof, whereby he wholly lost and had been deprived of all the benefits, profits, and advantages which he otherwise might and would have derived from performing the contract.

The defendant interposed the plea of general issue, and gave notice of set-off; also of recoupment; and also that the owners of the other undivided half of the lands to be lumbered absolutely forbade defendant from cutting and removing any of the timber on sections 14 and 15 after the year 1875; that said plaintiff had a like written contract to cut the pine timber on sections 14 and 15 with the other undivided owners, and in the year 1875 he released them therefrom.

At the trial the plaintiff introduced in evidence the contract set out in the first count of the declaration, and also evidence tending to prove that he entered upon the performance of the contract, and continued during the logging season of 1872–73, 1873–74, and 1874–75; and in the fall of that year, by mutual arrangement between the parties, the performance of the contract was postponed one year; that at the expiration of this time he offered to perform and was forbidden by defendant to cut the timber, and from that time he abandoned the contract, and never after offered to perform; that after such refusal he entered into a contract with defendant and other parties to cut and put in logs from other lands for three dollars a thousand feet, which job he performed and completed in the spring of 1877.

The reasons stated by defendant why he did not wish the plaintiff to go on and cut the timber under the contract on each occasion was that the timber was not suitable for the

then existing market, being too small and of too poor quality; that the price the lumber brought left him nothing for stumpage. No offer was made by plaintiff to perform his contract in the season of 1877–78, and on the 28th of March, 1878, this suit was commenced.

Such being the substance of the plaintiff's proofs, the defendant claims that there was such a material variation therein from the contract as alleged, as entitled him to an instruction from the court that he was entitled to a verdict from the jury.

The record discloses that the main point of contention during the trial, and to which the proofs of the respective parties were directed, was whether the oral agreement between the parties was merely for a postponement of the performance of the contract so far as it related to the work to be done on sections 14 and 15, as claimed by the plaintiff, or whether the agreement was that the work furnished by defendant and others upon other lands was to be in lieu of that to be performed under the contract, as claimed by the defendant. The facts bearing upon each of these claims, with the law applicable thereto, were by the court submitted to the jury, and they having returned a verdict for the plaintiff, that question of fact must be regarded as settled in his favor.

In this Court we are obliged to deal with the record as the parties have made and presented it to us. It does not appear from the record that any requests were presented on behalf of the defendant for specific instructions to the jury. Undoubtedly it is the duty of the court to present to the jury the substantial issues in the cause, and to state to them the principles of law governing the rights of the parties, whether any specific instructions are requested by counsel or not. This duty was performed by the trial judge in this case. His instructions covered all branches of inquiry under the issues made by the pleadings; and if counsel desired more full or specific instructions upon any particular point, it was his duty to frame a special request to the court to charge as desired. Omitting or neglecting to do so,

he will be deemed to be satisfied with the sufficiency of the instructions as given, and an exception based upon the want of sufficiency on particular points of law cannot be assigned as error. This disposes of the third, fourth and fifth exceptions to the charge, and the assignments of error based thereon.

The first exception is grounded upon a variance between the allegations of the declaration and the proofs. The declaration alleges that the plaintiff performed the contract for five years and was discharged from performance by defendant in December, 1877. The proof showed that plaintiff had performed for three years, and a readiness and offer to perform in accordance with its terms; but that, at defendant's request, performance was postponed a certain time, at the expiration of which plaintiff again offered to perform, which performance defendant refused to permit. It is claimed that this variance is fatal to a recovery. No objections were made to the introduction of the proof during the trial, and no request was made to the court, based upon such variance, for any instruction to the jury, or motion made to obtain a ruling of the court thereon; but, after all the evidence was submitted to the jury, and the charge of the court given based upon the evidence introduced, the exception was taken to the charge because of such variance. The question, raised for the first time in this manner, comes too late. *M'Hardy v. Wadsworth* 8 Mich. 349; *Stone v. Covell* 29 Mich. 359. Moreover, under the charge of the court and finding of the jury, there was no valid contract to postpone performance, and the evidence was only relevant to show that such postponement was at defendant's request, by which he was estopped to deny performance during that time. *Cummings v. Arnold* 3 Met. 486; *Hickman v. Haynes* L. R. 10 C. P. 598.

The second exception to the charge is as follows : " The defendant excepts to so much of the charge as assumes that there is any evidence in the case tending to show that a parol agreement, alleged to have been made in 1875, for an extension of the time of performance of part of the written con-

tract between the parties could not be performed in one year from the making thereof, and to such portions of said charge as submit that question to the jury." It is the province of the court to construe, interpret and determine the legal effect of all contracts. When the contract is in writing and its execution duly proved, the court must determine the legal effect of the language used. When it is verbal, the question of what the terms of the contract are, as established by the evidence, is for the jury. In the latter case the court must still determine the legal effect, and his instructions to the jury must necessarily be based upon facts assumed, and upon the existence of which the jury are to find from the evidence. The record shows that there was evidence tending to show that there was a parol agreement made in 1875 for an extension of the time of performance of the written contract, and that in the mean time he was doing work for the defendant upon other land, and defendant's testimony tended to show that this work was a substituted performance of the contract, and was in lieu thereof. What the agreement was, for postponement and doing other work, was for the jury to determine. The contract set out in the declaration, and proved upon the trial, was under seal. It was not, however, a contract which is required by the statute of frauds to be in writing. The only clauses in the contract which give rise to any uncertainty are the following: "To cut, haul and deliver afloat in said streams all the logs that can be cut from off said section 14 and section 15, in the town aforesaid; at the rate of two million feet, board measure, every winter, and as much more as said Gray and the other owners of said timber shall desire. * * * All logs put in by said Barton in either of the streams aforesaid in any winter succeeding the coming one, and put afloat in said stream, said Gray is to pay for at the rate of two dollars and fifty cents per thousand feet, board measure, for his share of said logs, as fast as said work progresses." Although reference is here made to logs which may be put in "every winter," and in "any winter succeeding the coming one," yet there exists a contingency which, under the contract, permits the job to be fully completed within a year.

That contingency may be fulfilled either in case the quantity of pine does not exceed two million feet, or in case Gray and the other owners should desire the whole quantity to be put in within the year.     The statute of frauds only applies to contracts which by their terms are not to be performed within a year from the making thereof, and not to agreements which in the absence of express stipulation to the contrary, may possibly or probably not be performed within the year, or which depend upon a contingency that may happen within the year. This was the view taken of this contract when the case was here on a former occasion (48 Mich. 164), and no reason is perceived for changing the opinion then entertained.     It was a maxim of the common law that no contract or agreement could be dissolved except by matter of as high a nature as that which first made it obligatory (Broom's Legal Maxims 407); and based on this maxim, there are many authorities which hold that a contract under seal cannot be varied or discharged by a mere parol agreement while the contract itself remains entire and unbroken.     *Wentz v. Dehaven* 1 Serg. & R. 312; *McMurphy v. Garland* 47 N. H. 316; *Kuhn v. Stevens* 7 Robert. 544; *West v. Blakeway* 2 Man. & G. 729; *Cordwent v. Hunt* 8 Taunt. 596; *Eddy v. Graves* 23 Wend. 82; *Spence v. Healey* 8 Exch. 668; *Sinard v. Patterson* 3 Blackf. 353; *Miller v. Hemphill* 9 Ark. 488; *Patrick v. Adams* 29 Vt. 376.     In modern times the attaching of a seal to a signature is not regarded with that reverence which was formerly the case, and when the Legislature enacted that a seal or wafer was unnecessary, but that a scroll or other device should be sufficient, the solemnity attending the execution of such contract vanished; and when the Legislature further provided that no instrument should be held invalid for want of a seal, and it became under the statute mere prima facie evidence of consideration, the affixing of seals, except to instruments required by law to be under seal became of no practical importance.     Consequently, it has been held by this Court that parties who have made written contracts may vary them afterwards as much as they please by parol, if the nature of the agreement is not such that the law

requires them to be in writing. *Seaman v. O'Hara* 29 Mich. 66; *Westchester F. Ins. Co. v. Earle* 33 Mich. 152; *Roger Williams Ins. Co. v. Carrington* 43 Mich. 256.

Of course the principle above stated implies that the subsequent agreement by which the original contract is varied must be a valid and binding agreement between the parties. It must be based upon a sufficient consideration, and must not itself be void under the statute of frauds. If it lacked the elements of a valid contract, it would be a nudum pactum and not binding upon either party, in which case the original contract would remain intact. It was proper, therefore, for the court to instruct the jury, as he did in this case, as follows: "If the arrangement was simply for a postponement of the execution of the contract, and the execution of the contract, under the terms of the postponement, might have been accomplished within one year from its date, by its terms, the plaintiff cannot in this action recover because in that case the contract which he has made,—which is made by the subsequent agreement,—is a different contract than that upon which he declares and seeks to recover at your hands. If, upon the other hand, the contract by its terms,—by the terms of the oral agreement between the parties,—the contract alleged to have been made could not be performed within one year from the date of the oral agreement in relation to it, it would not be good as a contract. It might be treated by the parties as a waiver of the right upon either side to insist upon the immediate performance of the contract, but it would not be good as a contract to take the place of the original contract." Under this charge the jury, in returning a verdict for the plaintiff, must have found that the oral arrangement between the parties relative to the extension of the time of performance could not, by its terms, be performed within one year from the time of the making thereof. It was therefore void under the statute of frauds applicable to such agreements, and as a necessary consequence, was a mere nullity, and could not be used for any purpose. *Chamberlain v. Dow* 10 Mich. 319; *Hall v. Soule* 11 Mich. 494;

*Holland v. Hoyt* 14 Mich. 238; *Grimes v. Van Vechten* 20 Mich. 410; *Scott v. Bush* 26 Mich. 421.

The defense urged is not open to the defendant for another reason. No person can complain of an injury caused by the act or conduct of a party to which he has consented; and no one who causes or sanctions the breach of an agreement can recover damages for its non-performance, or interpose it as a defense to an action upon the contract. *Shaw v. Lewistown Turnpike Co.* 2 Pa. (Pen. & W.) 454; *M'Kee v. Miller* 4 Blackf. 222; *Young v. Hunter* 6 N. Y. 203; *Boutwell v. O'Keefe* 32 Barb. 434; *Hart v. Lauman* 29 Barb. 410; *Pike v. Butler* 4 Barb. 654; *Mayor &c. v. Butler* 1 Barb. 325; *Stone v. Sprague* 20 Barb. 509; *French v. New* 20 Barb. 481; *Jewell v. Blandford* 7 Dana 472; *Smith v. Edmunds* 16 Vt. 687; *M'Combs v. M'Kennan* 2 Watts & S. 216.

The errors assigned upon the exceptions taken to the charge of the court are overruled.

Several errors are assigned upon alleged errors of the jury in finding facts in favor of the plaintiff, or that their finding was against the weight of evidence. It is needless to say that we cannot entertain or consider errors of this kind.

The twentieth assignment of error relates to the election made by the plaintiff to rest his case upon the first special count of his declaration, after he had, upon a former trial, elected to go to trial upon the third special count. But this assignment is not based upon any exception, and after a trial and verdict the point must be held to have been waived.

The other assignments relate to matters occuring subsequently to the rendition of the verdict, and are based upon the record, which shows that during the trial the plaintiff in open court announced that he elected to rest his case upon the first count of his declaration and abandoned the other special counts; and later he also announced that he did not claim a recovery under the common counts. The verdict was general, and judgment was entered thereon in favor of the plaintiff.

It is claimed by the defendant that the result of what transpired was a mistrial. We do not find such an incon-

sistency in the special counts as the counsel for defendant suppose exist. They all seek a recovery for the violation of the same contract. The second and third differ from the first in containing averments of an agreement to postpone the time of the performance of the contract. There can be no doubt but that a waiver of performance, or an agreement to extend the time of performance of a condition precedent, is equivalent to a performance thereof at the stipulated time, and leaves the original contract between the parties intact. The same proofs required to establish the second and third counts were essential to maintain a right to recover under the first. There was no proof introduced by plaintiff but what was relevant to support the cause of action alleged in the first count of the declaration. The jury could not therefore have been misled, or their judgments obscured, by the averments of the second and third counts. The charge of the court is applicable only to the first count, and we do not see any opportunity for a misunderstanding by the jury as to the issue of fact they were to determine. It was competent, therefore, for the court to apply the verdict to the first count of the declaration, and it was proper, although not necessary, for him so to amend the record. The only omission in the declaration was the averment that the plaintiff was excused from the performance of the contract, from the fall of 1875 to the fall of 1877, by the request of the defendant and the assent of plaintiff to postpone the performance thereof. The proof, however, was fully gone into as to the postponement, and the imperfection, if any existed, is cured by How. Stat. § 7635, subd. 8, which provides that after verdict judgment will not be reversed for omitting any allegation or averment of any matter without proving which the jury ought not to have given such verdict. *Kean v. Mitchell* 13 Mich. 207 ; *Stone v. Covell* 29 Mich. 359. Both parties upon the trial went fully into the question of the agreement for postponement ; each was sworn and laid before the jury his version of that agreement,—all of which evidence was admitted without objection, and it is difficult to see either that defendant was

misled, or was not fully prepared with his proofs to meet the case. In such case, no damage could possibly accrue to defendant on account of such variance, and this Court will not reverse a judgment for an error which could not, under any circumstances, work prejudice to the defeated party.

The other Justices concurred.