St. Ange Duplanty v. William Stokes and David
Kelley.

*Contract—Sale of logs—Delivery—Waiver of conditions—Pleading
—Bill of particulars—Evidence—Measurement—Accept-
ance of timber—Estoppel.*

1. In a suit to recover the balance claimed to be due upon a con-
tract for the delivery of a certain amount of timber by a
given date, the plaintiff was permitted to show that, when he
reached the mouth of the river down which the timber had
to be run, he found a boom strung across the river; that he
consulted the attorney of the defendants as to his right to cut
the boom; that, when about to cut it, one of the defendants
told him it was best not to do so, and that there was no hurry
about the delivery of the timber; that, acting upon his state-
ment, plaintiff was detained there several weeks, and pre-
vented from delivering the timber by the agreed time. And
it is held that the testimony was admissible as tending to show
that the delay was assented to by the defendants; citing.
*Barton v. Gray,* 57 Mich. 622.

2. A bill of particulars, in a suit commenced by a common-count
declaration to recover the balance claimed to be due upon a
contract for the delivery of a quantity of timber astern of a
vessel at a certain city, contained a charge for "cash paid
for labor of men in watching raft, and looking after the same
at request of defendants." And it is held that the bill of par-
ticulars is broad enough to admit proof of the delivery of a
raft of the timber at a certain shipyard, instead of astern of
a vessel, and that the plaintiff was requested by the defend-
ants to look after the raft, and did so, and charged defend-
ants with his time.

3. The contract provided that the timber should average 55 cubic
feet per stick. Some timber of a less average was delivered,
and testimony was admitted to show that after the contract
was made, and before the timber was delivered, plaintiff was
offered 24 cents per foot, being 2½ cents less than the contract
price, for said timber. And it is held that an objection that
the testimony was too remote in point of time is untenable.

4. The contract further provided that the timber should be suitable for
a designated Canadian market. The defendants sold one raft of

the timber to a Michigan ship-builder, whose scaler measured it as between defendants and the purchaser. The scaler testified that, at the request of the defendants, he used, in making said measurement, the Canadian hook and rule, and that this would give less timber than if he had used the American hook. He was then permitted to testify as to the difference between the American and Canadian hooks in measuring timber. And it is held that the testimony was admissible.

5. The defendants claimed damages for the non-performance of the contract, in that the timber delivered did not average the required number of feet per stick, and that it was not suitable for said Canadian market. On the trial the defendants sought to show by the testimony of one of them that they would not have contracted for timber of a less average number of feet per stick. And it is held that said testimony was properly excluded, as it would not have added to defendants' rights under their contract.[1]

6. One of the defendants was inquired of, on cross-examination, as to whether he had a vessel to take the timber on the day limited for its delivery. And it is held that the inquiry was proper as bearing upon the question whether or not he understood that he had waived the delay in delivering the timber, as claimed by the plaintiff.

7. The marking by defendants of that portion of the timber considered to be suitable for the designated market if of the required average (the title to which timber vested in them as manufactured in the woods), and the subsequent receipt of the same, upon the agreement that the timber should be made to average 55 cubic feet per stick by supplying other larger timber, which was not done, will not preclude the defense that said timber so marked was below the specified average.

Error to Bay. (Cobb, J.) Submitted on briefs November 23, 1894. Decided January 22, 1895.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

---

[1] The defendants' counsel, in their brief, claimed that the testimony was admissible, because it would have served to explain the fact that the defendants were buying timber for said Canadian market only; that said market required timber averaging not less than 55 cubic feet per stick; and that they would not have contracted for timber averaging a less number of feet.

*T. A. E. & J. C. Weadock*, for appellants.

*Simonson, Gillett & Courtright*, for plaintiff.

MONTGOMERY, J.   Plaintiff recovered a balance claimed to be due him for certain lumber, logs, and square white oak timber.   It was conceded on the trial that plaintiff had furnished board pine and saw logs, and was entitled to a credit therefor of $1,853.50.   The dispute arose over the allowance which should be made to plaintiff on account of square oak timber, and over the damages claimed by defendants for the non-performance of the special contract by plaintiff.   The agreement between the parties was in writing, and, by the terms of it, plaintiff agreed to sell to the defendants 20,000 cubic feet of square white oak timber suitable for the Quebec market, and to deliver the same astern a vessel in Saginaw river, at Bay City, on or before June 1, 1890, all of said timber to average 55 cubic feet per stick.   The defendants undertook to pay plaintiff at the rate of 26½ cents per cubic foot for all of said timber manufactured and delivered in the manner recited, "which said sum shall be payable as follows: 15 cents per cubic foot when manufactured in the woods; 5 cents per cubic foot when delivered on the railroad; and the balance when said timber is delivered astern of a vessel at Bay City."   A further provision of the contract was that the title to said lumber should be vested in said Stokes and Kelley from the time the said timber was manufactured in the woods.

1. It was shown on the trial that the plaintiff had run the timber down the Chippewa, and, when he reached the mouth of the Chippewa river with his drive, he found a boom across the mouth of the river, placed there by the owner of a mill maintained at that place.   Plaintiff was permitted to show, against defendants' objection, that he consulted defendants' attorney relative to his right to cut

the boom, and went up on purpose to cut the boom, and defendant Kelley said to him it was not best to do so, as it would make hard feelings, and there was no hurry about any of the timber, and there would be time enough, and not to cut the boom; and that, acting upon this, the plaintiff was detained there five weeks. He was therefore not able to deliver the timber at the date contemplated. We think this testimony was competent as tending to show that the delay was assented to by defendants. *Barton v. Gray,* 57 Mich. 622.

2. The next objection is to the admission of testimony on the part of the plaintiff to show that a raft of timber was delivered at Davidson's shipyard, instead of astern of a vessel, and that plaintiff was requested by defendants to look after the raft, and did so, and charged defendants with his time. We think the bill of particulars was broad enough to admit of the proof, and that there was sufficient to justify an inference by the jury of a promise to pay for this service.

3. Some timber was delivered smaller than the average required, and testimony was admitted to show that plaintiff had been offered 24 cents per foot for such timber. The objection seems to be that the testimony as to the price offered was too remote in point of time, but we think not, as it was after the making of the contract, and before delivery.

4. The fifth assignment of error is based upon a ruling of the court in permitting a witness to testify as to the difference between the American and Canadian hooks used in measuring timber. Defendants' counsel, in their brief, state:

" The error of this ruling will be seen when it is recalled that the raft of logs which was sold to Davidson, and which McDonald measured, was measured by the American hook, which is most favorable to the seller;

and it was simply introducing into a case an element which could serve no purpose except to confuse the jury."

But the witness who measured the timber testified that—

"In measuring the 620 pieces, I used the Canadian hook and rule, at Mr. Stokes' request. That would give less timber than if measured by the American hook. Mr. Stokes was with me when I was measuring it. In figuring the amount, we used a ready reckoner and the Canadian rule."

5. The next assignment of error is based upon the refusal of the court to permit the defendant Kelley to testify as to whether he would have contracted with plaintiff for timber averaging less than 55 cubic feet per stick at the time he made the contract, in the fall of 1889. This ruling was clearly proper. The defendants were entitled to the benefit of their contract without regard to whether they would have contracted for a less average at the time.

6. Error is assigned upon permitting questions to be put to the witness Kelley, on cross-examination, as to whether he had a boat to take the timber on the 1st of June. We cannot say that this did not have some bearing upon the question as to whether he understood that he had waived the delay, as claimed by the plaintiff.

7. It appears that, during the time this timber was being manufactured, the defendants sent their scaler into the woods, who scaled and marked the timber, a portion being marked S & K, which was supposed to be that suitable for the Quebec market, and some marked S & K, diamond. That marked S & K, as appeared by the testimony, was only suitable for the Quebec market in case the average of the lot should be 55 feet. The court ruled, in effect, that an acceptance of the timber marked S & K, being the mark designed for timber suitable for the Quebec market, was conclusive, and the defendants could not afterwards assert

that this timber did not average 55 feet. It is undoubtedly the general rule that an acceptance of a commodity furnished in pursuance of an executory contract, as in compliance with the terms of such contract, is conclusive upon the purchaser, and he cannot afterwards be heard to say that the article does not answer the terms of the description.[1] But we think that rule was misapplied in the present case. Under the contract between the parties, the title to the timber vested in the defendants from the time it was manufactured in the woods; and one of the defendants testified that he looked over the timber, and found it very small in average; that he told plaintiff that his average was very low, and that he would have to get some much larger timber to make up his average according to his contract; that he said he would, that he had the timber bought,—the stumpage. Defendant further testified: "I went two or three times during the winter with the culler. The timber was not growing larger in average. I had a talk with Mr. Duplanty after the first time. I made some complaints to him. At this time considerable money had been given to Mr. Duplanty." So it would appear that the money was advanced upon a distinct understanding that this timber which had been marked by the defendants, and the title to which had, under the terms of the contract, vested in the defendants, should be made to average 55 feet by supplying other larger timber, which was not done. Under these circumstances, we do not think the acceptance of the timber prevents defendants from raising the question of whether it complies with the contract. They were not bound to reject it, and thereby lose their lien upon it, particularly as plaintiff testified:

"I had a talk with him [defendant Stokes] about the timber that would be under the average. I asked him

---

[1] See *Talbot Paving Co. v. Gorman*, 103 Mich. 403.

what was going to be done about the small timber. That was the timber that was under the average. * * * 'Well,' he says, 'we will have to do as I said; we will have to take it down, and you can sell it to whom you like.' 'Well, all right,' says I. And I met Mr. Armstrong, the man that buys timber for Mr. Wheeler. I was acquainted with him, and he spoke to me about some small timber. After that I saw Mr. Stokes, and I told him what I could get for the square timber. He says, 'We will give you the same.' I told him I was offered 24 cents for the small timber that was under the average, and he said, 'If you were offered 24 cents, I will give you the same.' So he kept that, too. He accepted both the small and large timber that I delivered. Mr. Stokes·did not make any objections to any of the timber, nor did Mr. Kelley, either as to size or how it was made."

It is very clear that, under this testimony, the defendants were not bound by the receipt of the timber to pay the contract price for anything below such as would make the average 55 feet, unless the fact of having placed the mark indicating that the timber was suitable for the Quebec market (S & K) upon the timber in the woods concluded them. But we think, if defendants' testimony were to be accepted by the jury, it is not conclusively shown that these marks and the subsequent receipt of the timber evidenced any such intent, as by that testimony the mark was placed there provisionally, and defendants had the right to rely upon the plaintiff's agreement to supply enough larger timber to bring the average up to 55 feet.

We think none of the other questions are likely to arise upon a new trial.

The judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.