HARRIET A. BRADY et al., Executors, etc., Respondents, *v.* PATRICK CASSIDY et al., Appellants.

Plaintiffs, whose testator had carried on a manufacturing business, sold to defendants the "plant," and leased to them the buildings in which the business had been carried, and after the lessees had taken possession, sold and executed to them a bill of sale of "the entire manufactured stock,   *   *   *   now on hand at foundry and store-rooms," which were part of the premises so leased.   Plaintiffs immediately began an inventory of the property, which when completed was delivered to defendants.   A large amount, consisting proportionally of the more valuable part of the goods which had appeared in and was exhibited as part of the stock at the time of the sale, was omitted from the inventory,

and it appeared had been delivered by plaintiffs to other parties, after the day of sale, upon orders received by them previous to that time, but as to which there had been no valid agreement of sale. In an action to recover the contract-price for the goods delivered, defendants set up as a counter-claim damages for the removal of the said goods. The court on the trial left it to the jury to determine what the parties meant by the " stock on hand " in the bill of sale, and charged that there was some part of the stock plaintiffs did not own at the time of the sale. *Held*, error; that as plaintiffs failed to show a contract, which, as between themselves and the alleged purchasers of the goods so taken from the stock, transferred the title of the property, plaintiffs remained the legal owners and entitled to dispose of it to defendants; and, as the property was on the premises occupied by defendants, the execution of the bill of sale passed the title to them; that assuming a valid executory contract of sale had been made by plaintiffs prior to the sale to defendants, the purchaser acquired no title to any specific property, and on the refusal of the vendors to fill the orders had simply a right of action for damages, and that it was the undoubted right of defendants to have the meaning and intent of their contract determined by the court.

When the terms and language of a contract are ascertained, in the absence of technical phrases, or of terms, the meaning of which is obscure, **or** of latent ambiguities, rendering the subject-matter of the contract uncertain and doubtful, the office of interpreting its meaning belongs to the court.

To render parol evidence competent, in case of a written contract, it is not enough that there were circumstances known to one of the parties which might have influenced him in making the contract which were not known to the other party; to create an ambiguity that opens the contract to parol explanation, it must be established by proof of circumstances known to all of the parties.

(Argued December 13, 1886; decided January 18, 1887.)

Appeal from judgment of the General Term of the Court of Common Pleas for the city and county of New York entered upon an order made April 5, 1886, which affirmed a judgment in favor of plaintiffs entered upon a verdict.

This action was brought to recover the purchase-price of certain goods alleged to have been sold by plaintiffs to defendants.

The material facts are stated in the opinion.

*John E. Parsons* for appellants. It is the province of the court to construe contracts unless the meaning is obscure and

depends upon the facts *aliunde* in connection with the written language. (*First Nat. Bk.* v. *Dana*, 79 N. Y. 108.) It is only where terms used are technical, or terms having a peculiar meaning in a particular trade or place, that the aid of the jury is invoked to ascertain their meaning. (*Goddard* v. *Foster*, 17 Wall. 123; *Levy* v. *Gadsby*, 3 Cranch. 186; *Bliven* v. *N. E. Screw Co.*, 23 How. [U. S.] 432; *Etting* v. *Bk. of U. S.*, 11 Wheat. 75; 6 Cond. R. 215; *Barreda* v. *Silsbee*, 21 How. [U. S.] 147; *Beggs* v. *Forbes*, 30 Eng. L. and Eq., 508; *Shore* v. *Wilson*, 9 Clark & Fin. 569.) Where a question depends upon and is an inference to be drawn from circumstances, it is a question of fact for the jury; but where it turns upon a question of a writing, and no special circumstances need be taken into account, it is a question of law for the court. (*Stokes* v. *Johnson*, 57 N. Y. 673.) The motion for a nonsuit should have been granted. (*Butler* v. *Butler*, 77 N. Y. 472.) Only such defects are waived by acceptance as are or can be known to the purchaser by observation at the time of delivery. (*Hoe* v. *Sanborn*, 21 N. Y. 552; *White* v. *Miller*, 71 id. 118.) The contract in this case vested the property in the defendants. It was not an executory contract. (*Groot* v. *Gile*, 51 N. Y. 431; *Terry* v. *Wheeler*, 25 id. 520; *Kimberly* v. *Pachin*, 19 id. 330; *Crowfoot* v. *Bennett*, 2 Comst. 258, 260.) The cases which determine that acceptance constitutes a waiver as between buyer and seller do not apply either to executed contracts of sale or to a breach of warranty. (*Muller* v. *Eno*, 14 N. Y. 597; *Briggs* v. *Hilton*, 99 id. 517.)

*George H. Forster* for respondents. The whole charge must be considered to ascertain if there was any error. (*Jones* v. *Osgood*, 6 N. Y. 233; *Governors of Alms House* v. *Am. A. Union*, 7 id. 236; *Lansing* v. *Wiswell*, 5 Denio, 213; *Caldwell* v. *Murphy*, 11 N. Y. 416; *Walsh* v. *Kelly*, 40 id. 556; *Ayrault* v. *Pacific Bk.*, 47 id. 576; *Beaver* v. *Taylor*, 93 U. S. 46, 54.) The defendants have no ground of exception to the ruling of the court, that

the meaning of the words "stock on hand " was not, in this case, a question of law, turning upon the construction of the contract to be determined by the court, but that he should leave it to the jury to say what the parties meant by the use of those words. (*Stokes* v. *Johnson*, 57 N. Y. 673; *Pitney* v. *Glenns Ins. Co.*, 65 id. 17; *First Nat. Bk.* v. *Dana*, 79 id. 108, 116; *Chapin* v. *Dobson*, 78 id. 74; *Julliard* v. *Chaffee*, 92 id. 529; *Eighmie* v. *Taylor*, 98 id. 288.) On an executory contract for the sale of goods to be delivered at a future day, the acceptance of the goods is held to be an admission of due performance by the seller and a waiver of defects, if any there be, in the subject of a sale. (*Reed* v. *Randall*, 29 N. Y. 358.) The defendants were bound to examine the stocks, and to return the same if not as contracted for. Not having done so, they waived all defects. (*Hargous* v. *Stone*, 5 N. Y. 73; *Pomeroy* v. *Shaw*, 2 Daly, 267; *Weaver* v. *Wisner*, 51 Barb. 638; *Holden* v. *Clancy*, 58 id. 591; *McCormick* v. *Sarson*, 45 N. Y. 265; *Woodruff* v. *Peterson*, 56 Barb. 407; *Gaylord M'fg. Co.* v. *Allen*, 53 N. Y. 519; *Dounce* v. *Dow*, 64 id. 415.)

Ruger, Ch. J. Previous to June, 1883, Alfred Brady had for many years carried on the business of making plumbers' castings at a foundry and ware-rooms in the city of New York. Having died in May of that year, his executor determined to dispose of the business and property on hand, and in pursuance of that intention, early in June, effected a transfer of what was called " the plant," to the defendants, at a price agreed upon, and also leased the premises in question to them, from the day of sale, to the first day of January thereafter, and the defendants took immediate possession thereof. On the 20th day of June subsequently they also sold to the defendants their stock on hand and executed and delivered to them a written bill of sale, reading as follows:

" Sold to Cassidy & Adler the entire manufactured stock, in good condition, consisting of pipes, fittings, fines, etc., now on hand at foundry and store-rooms on Fifty-fifth and Fifty-

sixth streets, Tenth and Eleventh avenues. The price on same to be eighty (80) per cent from list-price, besides the sum of $700; the stock to be taken without tarring and to be left on premises; the same to be paid for in cash. The receipt of $100, as part payment of same, is hereby acknowledged.

"I.   WINTERBOTTOM,

"*Executor.*"

The property sold being then upon premises occupied by the defendants, the execution of the bill of sale, passed the title and there remained nothing to be done to complete the purchase, but the preparation of an inventory and the ascertainment and payment of the net price of the property sold.

The preparation of the inventory was immediately set about by the plaintiffs, and it was completed and delivered to the defendants, some time about the middle of July, and it appeared therefrom that the net price of the property included therein, was $11,955.33.

Upon an examination of such inventory by the defendants, after its delivery to them, they discovered that it did not contain all the property purchased, and that a large amount of pipe, consisting proportionally of the most valuable part of the stock, which had appeared among the goods on hand in the stock at the time of the sale to defendants, was not included in it, and upon demanding an explanation of this circumstance they were informed by the plaintiffs that it had been delivered by them to other parties, customers of the foundry, after the day of sale, upon orders received by them previous to that time, and they claimed the right to make such delivery under the terms of the bill of sale. The defendants protested against this disposition of the property and claimed damages for its removal from the foundry.

The value of the goods, over the contract-price, thus removed amounted to several thousand dollars.

This action was brought to recover the amount shown to be due by the inventory, and the defense was a counter-claim for damages arising out of the withdrawal by the plaintiffs of

the pipe in question from the stock sold, after the delivery of the same to the defendants. The question discussed relates to the validity of this defense.

No question was made on the trial but that the pipe in question, was on the premises on the day of sale, and was exhibited to the defendants as a part of the stock by the plaintiffs, but it was claimed that such goods ought not to be considered, as included in the terms of the bill of sale.

Neither was it claimed that there was anything ambiguous in the language of the bill of sale, or any doubt or uncertainty arising over the description of the property referred to therein, but it was claimed by the plaintiffs, and held by the trial court, that proof of the circumstances surrounding the sale, and the situation of the parties, created an ambiguity which authorized the plaintiffs to give parol evidence to explain and apply the language used, to the subject of the sale, and limit the effect of the description.

The burden of establishing such a condition of things naturally rested upon the plaintiffs and they attempted to meet by proof the responsibility thus cast upon them.

Evidence was given, by which it was attempted to be shown that they had previous to June twentieth effected sales of pipe, fittings, etc., from the stock, to third parties, which constituted the property in dispute.

The evidence to establish such sales was extremely loose and unsatisfactory, and fails, as we think, to show any valid agreement for such sales. The principal witness on this question was one Newcomb, a former clerk of the plaintiffs, who claims to have bought the bulk of the property, delivered after June twentieth to third persons, from the plaintiffs, and to have sold and delivered it to customers of his own directly from the warehouses leased to the defendants. Some of it was delivered after June twentieth to a purchaser who had previously promised to come and look at the stock and select some goods for purchase, but the most of it was delivered to persons who had no relations with the plaintiffs, but bought directly of Newcomb after the twentieth of June. The only

authority shown in Newcomb to make such sales arose from a notice given by him to one Finch, an employe of the plaintiffs, about a week previous to June twentieth, to the effect that he would take the balance remaining in the stock of certain kinds of pipe and fittings then specified by him. These goods were not charged to Newcomb at this time, neither was any part of the purchase-price then paid or goods delivered, nor was any memorandum in writing made of the transaction. It does not even appear that the plaintiffs agreed to sell the goods to Newcomb. Some few articles were also shown to have been ordered by two or three different parties previous to June twentieth, and were entered in the books as sold, although they were delivered thereafter, but the amount and value of such goods, does not appear and they were apparently regarded on the trial as of insignificant importance. It is quite evident from this state of facts that even no valid executory contract of sale was made between the plaintiffs and Newcomb, much less that any contract was effected transferring the title of the property in question to Newcomb or the intending purchasers.

It is also clear that the proof did not establish any valid executory contract of sale of such goods to third persons, prior to June twentieth within the provisions of the statute of frauds. (*Rockwell* v. *Charles*, 2 Hill, 499.)

There was no suggestion in the evidence that the defendants had knowledge of these alleged sales, or reason to suppose that any portion of the stock pointed out as that proposed to be sold, had been previously sold to other parties.

Such an idea could have been entertained by them, only upon the assumption that the plaintiffs were intending to perpetrate a fraud in making a sale to them. Under these circumstances the court upon the trial, left it to the jury to determine what the parties meant by the use of the terms "stock *on hand*," as used in the bill of sale, whether it meant all of the pipes in the building, whether previously sold to other parties or not, or only those pipes that the executors still owned at the time the contract was made.

The determination of the court to leave these questions to

the jury was duly excepted to by the defendants, and it was further requested to pronounce upon the meaning and intent of the contract in the respect mentioned, which it refused to do, and the defendants excepted to this refusal.

The court also charged the jury that "there was certain stock which they (the executors) owned that was in the inventory. All that was in the inventory Cassidy and Adler got. There was certain stock that they (the executors) did not own, that is not in the inventory, and that Cassidy and Adler have not got."

The defendants duly excepted to so much of this instruction as stated that there was some part of the stock that the executors did not own at the time of the sale to defendants.

We think these exceptions were well taken. The theory that there was any part of the property in question, of which the plaintiffs were not the owners at the time of their sale to defendants, had no support, as we have seen, in the evidence.

Upon the undisputed facts of the case, the plaintiffs had failed to show a contract which, as between themselves and the alleged purchasers, transferred the title of the property.

Notwithstanding all that was said and did, the plaintiffs remained the legal owners of such property, and entitled to dispose of it as they did, to the defendants on the twentieth of June. (*Caulkins* v. *Hellman*, 47 N. Y. 449; *Burt* v. *Dutcher*, 34 id. 493; Benj. on Sales, 321, §§ 308, 310.)

Even assuming that a valid executory contract of sale was made by the plaintiffs prior to June twentieth, to the purchasers referred to, such purchasers acquired no title to any specific property, and, upon a refusal by the vendors to fill the orders, had a right of action simply for damages.

The effect of the instruction, last referred to, was to withdraw from the jury the consideration of all evidence relating to the prior sales to other persons, and determine, as a question of law, that such transactions effected a transfer of the property referred to, from the plaintiffs to such persons. They were thereby directed to consider the evidence as establishing a change of ownership of the property in dispute, and to

determine the meaning of the language used in the contract in the light of that circumstance.

We think the evidence was not susceptible of such a construction, and that it wholly failed to show any change of ownership of the property referred to.

We think, also, that it was the undoubted right of the defendants to have the meaning and intent of this contract determined by the court and not by the jury.

The rule is well settled that when the terms and language of a contract are ascertained, in the absence of technical phrases, the meaning of which is obscure, or the existence of latent ambiguities, rendering the subject-matter of the contract uncertain and doubtful, the office of interpreting its meaning belongs to the court alone. (*Dwight* v. *Germania Ins. Co.*, 103 N. Y. 341; *First Nat. Bk.* v. *Dana*, 79 id. 108.)

It would be a dangerous principle to establish, where parties have reduced their contracts to writing, and defined their meaning by plain and unequivocal language, to subject their interpretation to the arbitrary and capricious judgment of persons unfamiliar with legal principles and settled rules of construction.

No such ambiguity, however, existed in the language of this contract as made it necessary or proper to refer its meaning to the jury, and the evidence as to the surrounding circumstances established no case showing that any uncertainty existed as to the identity of the property intended to be sold, or as to the meaning and intent of the contract.

Whatever notion might have been entertained as to the understanding of the plaintiffs in respect thereto, there was not the slightest evidence to show that the defendant had any reason to suppose that the contract had any other meaning than that expressed by the literal signification of its language.

It is not enough to render parol evidence competent, that there are circumstances known to one of the parties, but unknown to the other, which might have influenced such party in making a contract, but to create an ambiguity that opens such a contract to parol explanation, it must be estab-

lished by proof of circumstances known to all of the parties to the agreement, and available to all, in selecting the language employed to express their meaning.

This contract, however, was plain and unambiguous in its language, and was susceptible of but one construction. It stated that the subject of the sale was "the entire manufactured stock in good condition, consisting of pipes, fittings, fines, etc., now on hand at foundry and store rooms on Fifty-fifth and Fifty-sixth streets, Tenth and Eleventh avenues."

No technical words are used in the description and no difficulty existed in applying the language used to the subject of the contract with certainty and exactitude.

Notwithstanding this plain description of the property sold, the jury were permitted to find, under the instructions of the court, that it did not mean the entire stock on hand, but that it referred only to so much thereof as remained after other parties had removed such goods as they had previously notified the plaintiffs of an intention to purchase.

The proof showed that the goods thus taken consisted of the most valuable part of the stock, and, if authorized, the construction put upon the language used, effected a very material alteration of the terms of the contract to the damage of the defendants.

Other exceptions to the charge have been called to our attention, which we regard as worthy of serious consideration, but in view of the conclusions reached upon the main point in the case, we deem it unnecessary particularly to refer to or discuss them.

The judgments of the courts below should be reversed, and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.