## MORTIMER E. SERAT, RESPONDENT, *v.* GABRIEL L. SMITH AND ANOTHER, APPELLANTS.

*A written agreement, where its language is clear and not technical, is to be interpreted by the court — effect of receiving a statement and draft and of indorsing the latter — a receipt is only* prima facie *evidence.*

Where a written agreement between a client and his attorneys, as to the charges to be made by the latter for their services in an action, contains no technical or obscure phrases or latent ambiguities rendering its meaning doubtful, the office of interpretation belongs to the court alone.

It is error for the court to submit to the jury the question whether the agreement related only to the action described in it, or whether it also covered certain other services rendered by said attorneys in another action begun by them at the client's request.

The receipt of a statement of account and of a draft for the balance appearing thereby, and the indorsement of the draft, are not conclusive evidence of an acceptance of the statement and an assent thereto by the party receiving it.

A receipt is only *prima facie* evidence of the facts stated therein, and may be controverted or explained by parol evidence.

APPEAL by the defendants, Gabriel L. Smith and Andrew J. Robertson, from a judgment of the Chemung County Court entered in the clerk's office of said county on the 21st day of December, 1888, in favor of the plaintiff, and from an order entered in said clerk's office on the 18th day of December, 1888, denying their motion for a new trial, after a trial in the Chemung County Court, before the court and a jury, at which a verdict was rendered in favor of the plaintiff for $110.30.

The plaintiff's complaint alleges that on the 12th day of July, 1883, he made an agreement with the defendants, who were practicing lawyers in the city of Elmira, "whereby it was contemplated and agreed that these defendants should receive and retain for themselves, as and for full payment and compensation by plaintiff, for

their costs and disbursements, and all claims for services performed and to be performed, and costs earned and disbursements incurred, then past and prospective, in relation to or arising out of a claim of this plaintiff, against the Utica, Ithaca & Elmira Railroad Company, one-third of the amount collected as damages in behalf of the plaintiff against the said railroad company, and should pay to plaintiff the remaining two-thirds of such amount as soon as the same was received by defendants, together with such interest thereon as might be received by defendants when said damages might be paid to them by said railroad company."

The complaint also alleged that on the 10th day of May, 1886, " after these defendants had performed all the services contemplated by said agreement and relating to the plaintiff's said claim against said railroad company, the defendants received, under said agreement, from said railroad company, the sum of $1,516.50, the amount of the damages obtained by plaintiff against said company, and also the sum of $237.78, the interest on said $1,516.50, from September 29th, 1883, the date when said sum was awarded as damages to plaintiff against said company, to May 10th, 1886, the date when said damages and interest was paid, amounting in all to the sum of $1,754.28." The complaint then alleged that plaintiff had demanded payment of the sum of $1,169.52, " but defendants failed and refused to pay the same or any part thereof to plaintiff until March 21st, 1887, when defendants paid to plaintiff, to apply thereon, the sum of $1,054.00, the amount then due and payable from defendants to plaintiffs being $1,230.09   *   *   *   and there remained due to plaintiff and unpaid, after deducting said sum of $1,054.00 paid to apply, the sum of $176.09."

The answer of the defendants was a denial of the allegations of the complaint, and an averment of " settlement and satisfaction and payment, and a counter-claim for services to the value of $250.00; it also demanded judgment for $250."

On page 490 of the defendants' register was the following agreement:

"SUPREME COURT — Chemung County.

MORTIMER E. SERAT
*ag'st*
THE UTICA ITHACA, & ELMIRA RAIL-
ROAD COMPANY.

"Smith & Robertson:

"The agreement between plff. and his attys. as to pay for their services is as follows: If the suit is tried and plff. is beaten, they are to have nothing, and if plff. succeeds on trial or by settlement they are to have one-third the amount obtained by plff., and all the costs recovered or received of deft. This is the agreement made in this action.

"July 12th, 1883.                    "M. E. SERAT.

                                        "Smith & Robertson,

                                                    "*Attys.*"

At that time the plaintiff claimed that the railroad company had forcibly ousted him from a tressel work which he claimed to own, and the action was brought to recover its value, which action resulted in a judgment on the 29th of September, 1883, for $1,516.50 damages. The company appealed from this judgment to the General Term.

Pending that action, and on or about the 3d of October, 1883, the defendants prepared papers in an action of sequestration, and, at Delhi, obtained an order to show cause, returnable at the Madison Special Term, requiring the defendant to show cause why a receiver should not be appointed, and upon the court's attention being called to the fact that a bond had been given on appeal, no order was made. The appeal was heard in the General Term and the judgment affirmed. The railroad company appealed to the Court of Appeals, where the judgment was affirmed, and the remittitur was entered in the Chemung county clerk's office on the 24th day of April, 1886. On the 10th day of May, 1886, the defendants executed and delivered to the railroad company a receipt for the amount of money then received, to wit, $2,108.19. In the statement to which the receipt is attached it appears that the amount of the first judgment, September 9, 1883, was $1,598.08, and interest thereon to

May 9, 1886, at six per cent, was $250.63. Other items in the statement appear to be for costs in the General Term and in the Court of Appeals. On February 26, 1887, the plaintiff, by telegram to the defendants, asked: "Has suit been decided?" On February 28, 1887, a telegram was sent to plaintiff, at Lexington, Mo., to the effect that one of the members of the firm was absent from home and that he would write on his return. On March 11, 1887, from Cherokee, Kan., the plaintiff sent a letter to one of the defendants making inquiry in respect to the suit, in which he says: "If the suit is undecided, please so advise." On March 19, 1887, a letter was addressed to the plaintiff by one of the defendants, which contained the following language: "I have just this week returned from Albany and the Court of Appeals, and am now happy to announce to you that I have succeeded in collecting your money and will send it to you just as soon as I can get into the bank to get a draft. It is now Saturday afternoon, and I cannot do so until Monday morning. I have expected for months to be able to send you your money every mail, and therefore have neglected writing until to-day, every day expecting to be able to send you a draft to-morrow, but it has been prevented until now. And now that I have got something to write you, I do so. This explains why I have not written you sooner, at least, it is the only explanation I have to give."

On the 21st of March, 1887, one of the defendants sent to plaintiff by mail a letter addressed to him at Cherokee, Kansas, with a draft for $1,054, which draft was to the order of one of the attorneys. The letter stated the draft to be "in full of balance collection against the Utica, Ithaca and Elmira R. R. Co." The letter contained the following: "The statement is as follows:

"Amount of judgment............................. $1, 516 50
"Deduct one-third................................      505 50

     "Two-thirds........:........................... $1, 011 00
"Charge for sequestration action....................      100 00

"Balance.......................................... $911 00
"Interest..........................................      143 00

     "Draft for total................................ $1, 054 00

" I have had more trouble getting this than any money I think I ever got. You remember that I had to bring a second action for you outside of the one in which I made the collection, for the purpose of sequestrating the road, which compelled them to give security, and that this action came on at Morrisville before Judge MURRAY, and for this I charge you $100. This was entirely outside of this action and was really the proceeding that caused our success. I had to pay out a very large part of this charge for expenses in getting papers served, going to Morrisville, Madison county, etc., in the case. I have expected all this year, from week to week to be able to send you the money, and in such expectation neglected writing you. I was before the Court of Appeals in Albany last week."

The plaintiff testified that the letters of the nineteenth and twenty-first of March were the only letters that he received " after the decision of the Court of Appeals up to the time of receiving them." The plaintiff testified that after he received the letter of March 21st and on the 21st of April, 1887, at Parsons, Kansas, he wrote to the defendants a letter containing a statement of the amount of the original judgment, and the interest thereon, and claiming therein that there was due him $1,230.20, less the remittance of $1,054, leaving the balance due the plaintiff of $176.20, and closing his communication with the following words : " I have drawn on you at sight for the above balance, $176.20. Please protect and oblige." The draft was produced in evidence having been returned to the plaintiff. " It is conceded that the payment of this draft was refused." It appears by the evidence that the draft of March 21, 1887, for $1,054, was an ordinary bank draft issued by the Chemung Canal Bank, Elmira, payable to the order of G. L. Smith, and bore upon it an indorsement as follows :

" Pay to the order of M. E. Serat in full for balance due on collection of judgment against the Utica, Ithaca and Elmira Railroad Co., in his favor.                    " G. L. SMITH."

And under the indorsement and signature, as already stated, was the signature of the plaintiff, to wit., " M. E. Serat."

In the letter of April fifth, which the plaintiff sent to the defendants, he stated : " You charge me $100 more than you agreed to

conduct the suit for; second, you do not remit all the interest I am entitled to. With the information now at hand, I cannot say exactly what the interest should be; but $143 does not cover it. Please remit the $100 above and balance of interest at once, and oblige." On the ninth of April the defendants wrote the plaintiff a letter, addressed to him at Parsons, Kansas, in which they say, viz.: " The statement we sent you is entirely correct. We made an agreement as to the one case, and after that agreement was made another action was commenced for you, in which we paid out about $40 in cash, and which action was the one that compelled them to give security on their appeal and so enable us to collect in the end. We charged you for the same $100, which is a very reasonable charge. The interest, as we figure it, is correct."

The complaint in the second action was verified by the plaintiff on the 3d day of October, 1883, and it stated that the execution on the judgment had been returned by the sheriff of Chemung county " wholly unsatisfied, and that said judgment is wholly unpaid, and the said plaintiff is unable in any way to obtain satisfaction thereof." Plaintiff verified an affidavit which was used to obtain the order to show cause on the 9th day of October, 1883. The order to show cause was signed October 10, 1883, and was returnable at a Special Term in Morrisville on the 16th day of October, 1883.

One of the defendants testifies that the plaintiff directed the commencement of the sequestration action; and, also, that "there was nothing said between myself and him with reference to the expense of it, or as to whether or no it would be included in the agreement that I had with him in the other action. I did not tell him at that time what the probable expense of the other action would be, or what the charge would be. There never was any statement made by me in the conversation with him in which I said that, notwithstanding the commencement of this action of sequestration, so-called, that the only expense to him would be the printing of points for the Court of Appeals."

The plaintiff testifies that on one occasion he obtained a copy of the agreement from one of the defendants, "and I asked him if that would cover all the costs that I would be liable for in the action. I didn't know but there might be something outside that I

did not understand; I asked him if that would cover all, and he told me that that would cover all the expenses that I would be liable for with the possible exception of printing something that had to go to the Court of Appeals. I don't know what; some argument or something that had to go to the Court of Appeals. Q. Points? A. Yes, sir, but beyond that I was responsible for nothing but the one-third. This was after this sequestration action had been commenced."

One of the defendants testifies that, on the 4th of May, 1886, he addressed a letter to the plaintiff to Lexington, Mo., in which he stated: "We have beaten them in Court Appeals, and hope to get our money soon, but they may keep us out of it a year or two by compelling us to sue on the bond, but I hope not. Let me hear from you so I may know your address in case the money comes;" and one of the defendants testifies that he did not know prior to the 19th of March, 1887, that the plaintiff "had changed his residence from Lexington, Mo., at least I heard that he had changed it, but I did not know where."

*Reynolds, Stanchfield & Collin*, for the appellants.

*James A. Douglas*, for the respondent.

HARDIN, P. J. :

When the agreement of July 12, 1883, was entered into by the parties thereto, neither of them contemplated or foresaw the possibility or probability of any other suit being necessary than the one which was then brought against the railroad company for the purpose of establishing the plaintiff's cause of action against the company. Neither the terms of the agreement nor the surrounding circumstances indicate that either of the parties to the agreement supposed or expected there would be any difficulty in collecting the claim if judgment was recovered therefor. The exact language of the agreement relates to the action commenced on the 12th day of July, 1883. The words "if the suit is tried" and the words "this is the agreement made in this action," indicate an intent and purpose on the part of the contracting parties to deal with the action then instituted; and, as already stated, there are no words in the agreement referring to any other action, and the words used are restrictive to the action then instituted. We think the parties in reducing the contract to writing " defined their meaning by plain and unequivocal

language," and that it was "the duty of the court, and not of the jury, to determine and declare what that is." (*Dwight* v. *Germania Life Ins. Co.*, 103 N. Y., 342.)

In *Brady* v. *Cassidy* (104 N. Y., 155) the rule which is applicable here is laid down by the Court of Appeals in the following language : " The rule is well settled that when the terms and language of a contract are ascertained, in the absence of technical phrases, the meaning of which is obscure, or the existence of latent ambiguities rendering the subject-matter of the contract uncertain and doubtful, the office of interpreting its meaning belongs to the court alone." In the case in hand we are unable to discover any technical phrases in the agreement entered into by the parties, the meaning of which is obscure, and we discover no latent ambiguities or anything in the phraseology used by the parties " rendering the subject-matter of the contract uncertain and doubtful." We, therefore, think the learned trial judge fell into an error when he refused, as a matter of law, to construe the agreement and when he submitted to the jury the question as to whether or not it embraced by its terms the services rendered in the second action commenced by the defendants at the request of the plaintiff. Exceptions were taken to the charge, and the refusals to charge, clearly presenting the questions here. It is insisted, in behalf of the respondent, that there was some evidence of an oral understanding between the plaintiff and the defendants that there should be no charge for services in the second action. Plaintiff gave some evidence tending to support such position ; however, the defendants' testimony contradicts that of the plaintiff. Besides, it may be suggested that after a recovery of the judgment the defendants, in virtue of the agreement, having a lien or equitable ownership of one-third of the judgment, were to that extent interested in the proceedings to realize the moneys upon it, and that circumstance may tend to support the theory of the plaintiff, that the defendants undertook the subsequent proceedings under a fresh arrangement that there should be no charge for their services in the efforts to collect the judgment. And in that respect there was a question of fact for the jury to determine. If we could see that the verdict rested upon that issue, then the error which we have already pointed out might be overlooked, but it is not apparent that the refusal to

rule upon the agreement as a matter of law, and the submission of its interpretation to the jury as a question of fact, may not have influenced or produced the verdict. The services rendered in the second action not having been embraced in the language of the agreement of July twelfth, compensation therefor was not covered by the sum which the defendants were entitled to receive under that agreement. If there was any agreement between the parties that the services should not be compensated for, if they were not embraced in the agreement, then the defendants were authorized to make a reasonable charge therefor, and having charged $100 therefor, the question upon the trial was for the jury to determine whether that should be the limit of their right to compensation, notwithstanding the evidence given by several professional gentlemen that the services were worth a much larger sum. However, it is quite apparent that the jury excused the defendants from paying the interest on the money while it was withheld by the defendants upon the supposition that the defendants were not aware of the residence of the plaintiff from the time they received the money on the 10th of May, 1886, down to the time when they transmitted it to him in March, 1887; and it seems to be equally apparent that the jury came to the conclusion that the services in the second action were covered by the agreement of July twelfth, and, therefore, they awarded the plaintiff $100, withheld by the defendants, and the interest thereon.

2d. We are of the opinion that no error was committed upon the trial in submitting the question to the jury as to whether the statement made by the defendants in March, 1887, and the draft of $1,054, and the indorsement thereon were equivalent to a receipt in full for the balance due on the collection of judgment against the railroad company; and upon all the evidence before the court we think no error was committed in refusing to charge that the plaintiff was bound by the indorsement on the draft transmitted to him by the defendants in March, 1887.

In *Ryan* v. *Ward* (48 N. Y., 207), it was said: "It has long been settled in this State that a receipt furnishes mere *prima facie* evidence of the facts stated therein, and that it may be controverted or explained by parol evidence. * * * This grows out of the fact that a receipt is not a contract. It is a mere declaration or

admission in writing. * * * A receipt in full contains a declaration that a certain sum has been paid in full of all claims of a certain kind, or of all demands. Neither kind of receipt embodies any contract. Both furnish only *prima facie* evidence, and are valuable only as such. Both are equally open to explanation or contradiction." The last case is cited approvingly in *McKenzie v. Harrison* (120 N. Y., 265).

It is insisted, in behalf of the respondent, that the jury were "justified in finding that the defendants wrongfully withheld the plaintiff's money, with the intention of using the same so long as they could do so, and that their pretense, that they did not send it to him, for the reason that they did not know his address, was only thought of when they were brought into a court of justice, to respond in damages for their unprofessional conduct." When this cause shall again be tried before the jury the respondent can assert that position. We find little occasion to express any controlling views upon the subject. Apparently the defendants received information as early as the twenty-fourth of April that the Court of Appeals had affirmed the judgment, as on that day they served the attorneys of the railroad with notice that the Court of Appeals had affirmed the judgment; and, on the 4th of May, 1886, served their bill of costs with a statement of the amount that was claimed, and on the 10th day of May, 1886, delivered their receipt for the money received of the railroad company, to wit, $2,108.19, which one of the defendants deposited in the bank to his own credit. Whether the defendants exercised good faith under the circumstances, and whether they should be relieved from the payment of interest from the 10th of May, 1886, until March, 1887, will be appropriate questions for the jury to consider. And bearing upon those questions the letter of April 28, 1886, may be considered. In their letter to the plaintiff one of the defendants states : " Your case has been argued in the Court of Appeals. When it will be decided nobody can tell, only the court, and they won't tell us. Will advise you when I learn." It may be observed that we find this letter quoted in the points of the respondent, and the first sentence thereof is made to read as follows : " Your case had been argued in the Court of Appeals," which is the correct version of the letter will, undoubtedly, clearly appear on the trial.

The judgment must be reversed and a new trial ordered in the County Court of Chemung county, with costs to abide the event.

MARTIN and MERWIN, JJ., concurred.

Judgment reversed and a new trial ordered in the County Court of Chemung county, with costs to abide the event.