[Civil No. 617.   Filed November 1, 1899.]

[59 Pac. 105.]

## J. C. ADAMS et al., Defendants and Appellants, v. JAMES O'CONNOR et al., Plaintiffs and Appellees.

1. APPEAL AND ERROR—REVIEW—SCOPE OF—AMENDMENT—DISCRETION-ARY.—Leave to amend during trial is largely a matter of discretion, and where there is no exhibit of the original complaint, and the record fails to show the scope or effect of the amendment, it is not open to review.

2. PLEADING—CONTRACTS—EVIDENCE—SUFFICIENCY.—An averment that defendant promised to pay plaintiffs seven dollars per thousand for all brick laid up in the walls of an additional building, according to the terms of a certain contract (with no terms given, except the defendants' promise to pay and plaintiffs' agreement to furnish materials and perform the labor), states a cause of action.

3. CONTRACTS—PAROL—EVIDENCE TO SUSTAIN—SUFFICIENCY — MOTION TO DISMISS.—In an action upon an alleged parol agreement for extra compensation for certain brickwork, the evidence showed that there was a written contract providing for all the walls of the building, according to plans furnished by architects, and work sued for was included in said plans. *Held,* that a motion to dismiss for failure to prove any verbal contract should have been sustained.

4. CONTRACTS—WRITTEN—CONSTRUCTION OF—FOR COURT AND NOT JURY.—A contract for the erection of a certain building, provided that plaintiffs should furnish all material and do all the brickwork in the construction of said building according to the plans and specifications of the architects. It further provided that at the time of signing the plans and specifications were not yet completed, and that the plaintiffs were to furnish all the material and do all the brickwork in accordance with any plans to be furnished by said architects. The plans provided for the walls, for which plaintiffs claimed extra compensation by virtue of a parol agreement. *Held,* that when the terms and language of a contract are ascertained, in the absence of technical phrases or the existence of latent ambiguities, the office of interpreting its meaning belongs to the court alone, and the submission of it to the jury, for their interpretation and construction, was error.

5. SAME—SAME—SAME — SAME — ACTION — TIME FOR COMMENCING. — Where a building contract provides that a balance of twenty-five per cent is payable within sixty days after the work has been completed, inspected, and accepted by the architects, an action to recover the balance, brought before the expiration of said sixty days, is premature, irrespective of the refusal or acceptance of the work by the architects.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. A. C. Baker, Judge.  Reversed.

The facts are stated in the opinion.

C. F. Ainsworth, and Thomas D. Bennett, for Appellants.

Walter Bennett, and Joseph Campbell, for Appellees.

DOAN, J.—This action was brought by plaintiffs and appellees herein against J. C. Adams and wife, appellants herein, in the district court of Maricopa County, on the eleventh day of December, 1896, to recover $3,131.04 and costs, for labor and material furnished under certain contracts in the construction of the Hotel Adams, in Phœnix, and the foreclosure of a mechanic's lien on the property for that amount.  Two contracts are set out in the pleadings, called "Contract A" and "Contract B," dated on April 23d and June 2d, respectively, which specified minutely, and at considerable length, the terms and provisions under which all materials were furnished and labor performed.  The plaintiffs alleged a further and verbal contract for labor and material beyond that covered by the written contracts hereinbefore mentioned, which was denied in the answer, the defendants claiming that the labor and materials were all provided for in the second written contract.  The defendant J. C. Adams demurred to the complaint—First, on the ground that the allegations do not state facts sufficient to constitute a cause of action; second, that it appears on the face of the complaint, and from the contract attached thereto, which is a part thereof, that at the time of the commencement of this action there was nothing due on said contract, and that the action was prematurely brought.

The contract was made for "all brick laid in the walls of the building now being erected upon the corner of Center Avenue and Adams Street, and commonly known as the 'Hotel Adams,' upon the following terms and conditions," among which are: "The walls of said building, when completed, are to be measured," etc.  "The parties of the first part agree to pay 75 per cent of the value of the brickwork that shall be laid in the walls, upon an estimate which shall

be furnished every two weeks by the architects, Millard & Creighton, and shall pay the full amount remaining due within sixty days after said work has been completed, inspected, and accepted, by said architects, Millard & Creighton. . . . The parties of the second part agree to furnish the brick to be laid in all walls in the above-mentioned building, and to lay them, according to the plans and specifications which shall be furnished to them by the said party of the first part or by the said architects, Millard & Creighton, for $7 per thousand. Said walls to be measured when erected and completed," etc. "It is agreed by all the parties to this contract that the plans and specifications for said building are to be made by Millard & Creighton, architects, and that said plans at this date are not completed, and that the work shall be done in accordance with any plans furnished by said architects, and under their direction, and in a manner satisfactory to them,"—duly signed and sealed. The complaint alleged that all the conditions of contract A had been fully performed on the twenty-sixth day of September, 1896, except where plaintiffs had been delayed by delay or default of the defendants; that all the conditions of contract B had been performed on September 18, 1896, excepting cleaning down the walls, etc.; that all the conditions of the verbal contract were performed by plaintiffs prior to November 15th, and that on the eighteenth day of September, 1896, and repeatedly thereafter, until November 2d, plaintiffs applied to the architects, Millard & Creighton, to measure, inspect, and accept the work done under said contracts, and that the said architects unjustly and capriciously refused to measure up said work, and file an itemized declaration of the acceptance of the same; that, on the second day of November, Mr. Creighton, one member of the firm, did state to plaintiffs his approval and acceptance of the work done by plaintiff under said contracts; that the defendant J. C. Adams informed plaintiffs that he would not, at any time within sixty days after said date of acceptance, pay the balance due upon said contract; that the plaintiffs, on December 2, 1896, filed for record the contracts, together with an itemized account of the claim, as required by law, and served on defendant J. C. Adams a copy of said notice of lien; that the said J. C. Adams was the husband of said Anna D. Adams; and that, in all

matters relative to the building mentioned under the contracts in question, the said J. C. Adams acted for himself and as agent of said Anna D. Adams, and as such agent had been in charge and in control of said work and building. On the trial of the case, the demurrer of the defendants was overruled. The testimony of the plaintiffs, relative to the verbal contract and the intentions and understanding of the plaintiffs upon signing the written contract B, was admitted in evidence over the objection of the defendants. The court refused to construe the contract B, when requested by the defendants, on motion, so to do, and, over the objection of the defendants, submitted to the jury for their consideration and interpretation, the written contracts, and the testimony of the plaintiffs explanatory thereof, as well as the testimony in regard to the verbal contract. The entire case, including the written contracts, was submitted to the jury under eleven instructions given at the request of the plaintiffs, fifteen given at request of defendants, and five special questions submitted to the jury by the court. The jury returned specific answers to the questions submitted, and a general verdict for the plaintiffs, and assessed the damage at two thousand dollars, upon which the court entered judgment in accordance with the verdict, and decree of foreclosure of the lien upon the property; from which judgment and decree, and the denial of the motion for a new trial, the defendants appealed.

1. The first and second errors assigned are directed to the ruling of the trial court in permitting the plaintiffs, over defendants' objection, to amend their complaint on the trial, and after the plaintiffs had rested. These rulings will not be reviewed by this court. The amendment of pleadings during trial is largely a matter of discretion, and in this instance the amendment was by·substitution, so that the record does not enable this court to determine the scope or effect of the amendments, there being no exhibit of the original complaint. The only text furnished in the record is of the complaint as it read after the last amendment, with no means of determining what constituted the original complaint, or what part of the text resulted from the first and second amendments, respectively.

2. It is next alleged that the court erred in denying defendants' motion to dismiss the action at the close of plaintiff's

case. This was practically a renewal of defendants' demurrer, but it goes somewhat further. The demurrer, although well taken as to the action on the contracts A and B, was properly- overruled as to the verbal contract alleged in the complaint to have been made on October 10th, when the defendant J. C. Adams promised to pay plaintiffs "$7 per thousand for all brick laid up in the walls of an additional building, according to the terms of said contract'' (with no terms given, except the defendants' promise to pay, and plaintiffs' agreement to furnish materials and perform the labor). This contract, if sustained by the evidence, would have been sufficient to constitute a cause of action.

3. The motion to dismiss, made after the plaintiffs rested, was based upon the theory that the plaintiffs had failed to sustain by any evidence the alleged verbal contract; that the terms of the written contract would exclude the possibility of any such verbal contract. The plaintiffs alleged that all material furnished, and all labor performed, under said contracts, were done under the direction and supervision of the architects, Millard & Creighton, mentioned in said contracts A and B, and the special superintendent of said work, employed for the purpose by the defendant J. C. Adams, and that the said material and labor were duly accepted by the said architects and superintendent as the work under said contracts progressed, and without complaint or protest on the part of said architects or superintendent. Plaintiff O'Connor testified, in answer to the question, "What verbal contract did you have, if any, with Adams with reference to the building of the one-story kitchen?" "We were told that they were ready to start, and we went on and got the brick there. They told us to commence hauling the brick." On cross-examination he testified as follows: "We hauled brick on the ground for construction of the kitchen before Adams returned from Chicago, and before we were notified to go ahead with the work. We never said a word about the job. We were anxious to go on with it. Mr. Adams and Mr. Guthrie never said anything to us about the price, nor what we were going to charge, but we done this work without any stipulation, and we did not know whether we were going to get $7 or $10 per thousand, and Mr. Adams did not know anything about it. We charged them $7 a thousand. Guthrie,

Adams, and myself measured up this when we completed the work, some time in November." Plaintiff Cottrell testified: "My recollection is we commenced the brickwork for the kitchen and dormitory in October. I do not remember Adams ever mentioning the kitchen to me personally." Defendant Adams testified positively that the contract B included the brickwork on the kitchen. The language of the contract is plain and direct, and included the brickwork in all the walls of the hotel building. The architects, Millard & Creighton, testified that the plans for the office and kitchen were a part of the plans for the building, and the plans and specifications as put in evidence sustained that testimony. The agreement in contract B, "that the plans and specifications are to be made by Millard & Creighton, architects, and that the work shall be done in accordance with any plans furnished by said architects," unquestionably disposes of this matter. Such being the case, the motion to dismiss should have been granted, and the refusal to grant it was error.

4. It is next claimed that the court erred in refusing to construe contracts A and B, set out in plaintiffs' complaint, when the contracts themselves were not ambiguous or uncertain, and in submitting the same for construction to the jury. The disposal of the proposition involved herein will render unnecessary the determination of many of the questions presented in the other assignments. The rule is well settled that when the terms and language of the contract are ascertained, in the absence of technical phrases, or the existence of latent ambiguities, rendering the subject-matter of the contract uncertain and doubtful, the office of interpreting its meaning belongs to the court alone. "It would be a dangerous principle to establish, where the parties have reduced their contracts to writing and defined their meaning by plain and unequivocal language, to submit their interpretation to the arbitary and capricious judgment of persons unfamiliar with legal principles and the settled rules of construction." *Brady* v. *Cassidy*, 104 N. Y. 155, 10 N. E. 131. This contract is clear, free from ambiguities, and easily understood. The parties themselves have plainly expressed in writing what is included in the contract. The contract expressly provides that the plaintiffs shall furnish all material and do all the brickwork in the construction of the Hotel Adams, according

to the plans and specifications made by the architects, Millard & Creighton. Then they put a clause in the contract, that, at the time of signing this contract, the plans and specifications are not yet completed, but that the said plaintiffs are to furnish all the material and do all the brickwork in accordance with any plans to be furnished by said architects. The only question, then, that was pertinent under this contract, was as to what plans and specifications were adopted and furnished by these architects, Millard & Creighton, for 'the construction of the Hotel Adams. Whenever this was ascertained, then it was certain what work was to be performed by the plaintiffs on their part. It was perfectly competent and proper to admit testimony as to what constitutes the plans and specifications, but it was not competent to show what work the plaintiffs understood they were to perform at the time they signed the contract, or what portion of the plans they understood was not included in the contract, except as expressed in the contract itself; for, if this kind of testimony is admitted, it would abrogate the contract, and let the entire transaction rest on parol. The court should have construed this contract according to its plain provisions, as indicated by the words and terms used, and should have defined the rights and liabilities of the parties thereunder, and should have so instructed the jury, and should not have submitted the contract to the jury, to draw their own conclusions from it, and place their own construction on it. *Bell* v. *Keepers,* 37 Kan. 64, 14 Pac. 542; *Barton* v. *Gray,* 57 Mich. 622, 24 N. W. 638; *Barnhill* v. *Howard,* 104 Ala. 412, 16 South. 2; *Hassett* v. *McArdle,* 7 Misc. Rep. 710, 28 N. Y. Supp. 48. The contract being free from ambiguities, no exposition is allowable contrary to the express words of the instrument. *Kihlberg* v. *United States,* 97 U. S. 398, 24 L. Ed. 1106. The plans and specifications, as put in evidence, provided for the walls of the kitchen and office. The architects identified these plans and specifications as the ones under which the building was constructed, and testified that the plans were drawn for them before contract B, under which the building was erected, was entered into. This testimony was uncontradicted. The court should therefore have construed contract B according to its plain terms and provisions, and should have instructed the jury that the walls of the office and kitchen were included

in the contract just the same as any of the other walls of the building. The refusal to do so, and the submission of the contracts to the jury for their interpretation and construction, was error.

It is next claimed that, in submitting the case to the jury, the court erred in refusing to hold, as a matter of law, that as to contract B, set out in plaintiffs' complaint, this action was premature, and to so instruct the jury. The contract provided that the defendants shall pay the plaintiffs seventy-five per cent of the value of the brickwork that shall have been laid in the walls, upon an estimate which shall be furnished by said architects every two weeks, and shall pay them the full amount remaining due within sixty days after said work has been completed, inspected, and accepted by said architects, Millard & Creighton. The evidence presented established the fact that seventy-five per cent of the value of the brickwork, as shown by the estimates of the architects, had been paid as required, and that the claim could exist for only the twenty-five per cent which would become due within sixty days after the work had been completed, inspected, and accepted by the architects. The plaintiff O'Connor testified that they completed the work some time in November,—about the 7th. The architect Millard gave the date as about the 15th of November. The testimony of all agreed that the work was measured up on the twenty-eighth day of November. Plaintiff O'Connor testified that he had a verbal acceptance of the building from the architect on the morning of November 28th; plaintiff Cottrell, that, some time about the 2d of November,—not positive as to exact date,—Mr. Creighton told him they were willing to accept the building as a good job. Millard & Creighton, the architects, both testified that they had never given a verbal or written acceptance of the work under that contract; that plaintiffs had demanded an acceptance, and the reason they had not given them an acceptance was that the work was not in accordance with the contract, and that was the only reason they refused to give an acceptance of the building; that the building was practically and substantially completed at the time of the measurement, November 28th, and they were willing to accept it as substantially completed, with the exception of some failures to comply with certain requirements in the contract, which were fully brought out

in the evidence, and which were the grounds for some allegations of breach of contract, failure to comply with requirements, and claims for damages on the part of defendants against plaintiffs, but are not material to this ruling. On November 30th the architects presented a letter or statement to the defendant Adams, stating that they could not accept the work; that it was not done in accordance with the contract, etc.; which letter, or statement, was by defendant presented to plaintiffs on that date. This action was brought December 11th. From this evidence, that is somewhat conflicting, the court might draw conclusions that would differ somewhat; but, as a matter of law, no recovery could be had upon any view which could be properly taken of the facts established by this evidence, because, upon the view most favorable to the plaintiffs that could possibly be taken, the sixty days had not expired, after either the completion, measurement, or acceptance of the work. While it might become material, in considering some other errors that have been assigned in this case, to determine whether, as a matter of fact, the architects did or did not accept the work, and, if the conclusion were arrived at that they did not accept it, then to determine whether such a case has been made showing the refusal to have been grossly and palpably perverse and unjust, so much so that the inference of bad faith and dishonesty would necessarily arise, and that thereby the plaintiffs would be entitled to, establish by other proof that they had executed the work according to the contract, and could recover from the defendants, notwithstanding the refusal of the architects to certify, that issue is not pertinent here, because, in any event, they could not maintain a suit for the remaining twenty-five per cent until after the expiration of sixty days from that date; and the date of the suit (December 11th) shows that it was brought within less than sixty days from the earliest date given of either the completion of the work or the measurement of the building, and the action of the architects thereon, whether that may have been considered an acceptance or a refusal to accept. *Smith* v. *Brady,* 17 N. Y. 173, 72 Am. Dec. 442. For the reasons assigned, the court should have held, as a matter of law, that the action as to contract B was prematurely brought, and should have so instructed the jury, and the refusal so to do was error.

The decision of the questions that have been determined renders unnecessary the consideration of the errors assigned in the different instructions given or refused to the jury, as the issues therein presented would not arise on the trial of the case in accordance with the views indicated herein. The judgment of the lower court is reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed. ·

Sloan, J., and Davis, J., concur.