THE SPOTLESS COMPANY, Appellant, *v.* COMMERCIAL TRUST COMPANY, Respondent.

First Department, February 5, 1926.

**Sales — action by buyer to recover damages for failure of seller to deliver part of shipment — contract was for sale of salvaged wire in possession of United States government — part of wire had been attached in proceedings against prior owner — seller, under Personal Property Law, § 94, impliedly warranted freedom from incumbrances — question of fact whether buyer knew that attachments had been issued.**

A seller of salvaged wire in the possession of the United States government at the time of the contract of sale is liable for damages for failure to deliver the amount sold, where it appears that the amount not delivered had been attached

in proceedings against the prior owner of the wire, and that that amount had been sold under the attachment, for the seller, under section 94 of the Personal Property Law, impliedly warranted that he possessed good title and that the goods were free at the time of the sale from any charge or incumbrance in favor of any third person not known to the buyer before or at the time the contract was made.

It was a question of fact whether or not the buyer had knowledge at the time of the contract of sale that a part of the wire had been attached.

APPEAL by the plaintiff, The Spotless Company, from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 11th day of November, 1924, affirming a judgment of the City Court of the City of New York in favor of the defendant.

*Joseph Day Lee,* for the appellant.

*John J. Curtin* [*Wesley S. Sawyer* of counsel], for the respondent.

FINCH, J. The plaintiff is suing for damages for failure on the part of the defendant to deliver some 73 tons of barbed wire purchased by the plaintiff under a written contract between the parties. The defendant had loaned moneys to one Heineman, taking as collateral security some 1,500 tons of salvaged barbed wire which was in storage at the Government War Reservation at Columbus, O. The loan was not paid and the defendant offered the wire for sale in order to satisfy its lien. The plaintiff had first purchased 500 tons of the wire, which were delivered and paid for, and then entered into the contract, upon which this action is based for the remainder of the wire. Said contract consists of a letter written by the defendant, reading as follows:

*"February 3rd,* 1922.

" MILTON CONE, Esq., President,
          " The Spotless Co.,
                    " Richmond, Va.:

" DEAR SIR.— We hereby confirm our acceptance of your offer over the telephone this morning, namely, that you will purchase the remainder of the barb wire, approximately nine hundred tons at a price of $8.10 net per ton, F. O. B. Columbus, via C. & O. Northern, instructions to be given to the Government at Columbus to ship two cars per week, approximately twenty tons to the car, and payment is to be made on the basis of $500 per week, in advance until the remainder of the wire has been shipped.

" Very truly yours,

" EH CS                                   EDWARD HUDSON.

" P. S. Since the above letter was written, your letter received. We have advised the government to send the cars three days apart.

" E. H."

Former owners of the wire had caused a part of the same to be painted and had not paid for said services. At the time of the sale to the plaintiff a portion of the wire had been attached in actions brought to recover the value of the aforesaid services. This attached wire amounted to some seventy-three tons which were sold by the sheriff under the attachments. The plaintiff urges that the defendant should have paid off these attachments. To this extent the plaintiff claims the defendant breached the contract by failing to deliver the balance of the wire. This contract is not ambiguous and its construction, therefore, is for the court. As was said by RUGER, Ch. J., in *Brady* v. *Cassidy* (104 N. Y. 147, 155): "The rule is well settled that when the terms and language of a contract are ascertained, in the absence of technical phrases, the meaning of which is obscure, or the existence of latent ambiguities, rendering the subject-matter of the contract uncertain and doubtful, the office of interpreting its meaning belongs to the court alone. * * * It would be a dangerous principle to establish, where parties have reduced their contracts to writing, and defined their meaning by plain and unequivocal language, to subject their interpretation to the arbitrary and capricious judgment of persons unfamiliar with legal principles and settled rules of construction." The agreement at bar clearly is to sell the remainder of the wire. The plaintiff, therefore, was entitled to have delivered whatever remained of the original lot of wire, irrespective of the actual weight of the same, be it more or less than the approximated weight.

It is urged by the defendant that as it was not in possession of the wire it did not warrant that it had title to the entire quantity comprised in the lot. It is not necessary to determine whether the defendant was in possession, since this fact is immaterial under the present provisions of the Personal Property Law (Art. 5, as added by Laws of 1911, chap. 571), known as the Sales of Goods Act or the Sales Act, section 94 of which provides:

"§ 94. Implied warranties of title. In a contract to sell or a sale, unless contrary intention appears, there is

"1. An implied warranty on the part of the seller that in case of a sale he has a right to sell the goods, and that in case of a contract to sell he will have a right to sell the goods at the time when the property is to pass;

"2. An implied warranty that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale;

"3. An implied warranty that the goods shall be free at the time of the sale from any charge or encumbrance in favor of any third

person, not declared or known to the buyer before or at the time when the contract or sale is made."

Prior to the enactment of the aforesaid section when property not in the possession of the vendor was sold, the rule in this State was that the doctrine of *caveat emptor* applied, and there was no warranty that the property sold was free from incumbrances, and a party bought at his peril. (*Scranton* v. *Clark*, 39 N. Y. 220.) In so holding, the courts of New York State were out of line with the great weight of authority. This has been changed by the aforesaid enactment, so that there is now an implied warranty of title whether or not the seller is in possession of the goods. There seems to be no officially reported case decided under this section. In Williston on Sales (2d ed. § 216) it is said: "The important things to note in comparing this section with decisions under the common law are (1) the warranty, not only of present right to sell, but of quiet enjoyment; and (2) the omission of any requirement that the seller shall be in possession."

Bogert on Sale of Goods in New York (p. 59) says: "The section is believed to be declaratory of the common law, except (1) that it apparently abolishes the peculiar New York rule that there was no implied warranty of title when the seller was not in possession of the goods at the time of the making of the contract,  *  *  *."

In McKinney's Consolidated Laws of New York (Book 40, p. 151) it is said: "It seems that this section alters the common law in one respect, namely, in that it implies a warranty of title regardless of the possession or lack of possession of the goods by the seller, whereas the common law implied no warranty of title where the seller was out of possession."

Under modern mercantile conditions where many commodities are sold which are not in the possession of the seller and never come into his possession, it would be the cause of much fraud and prevent commercial business from being reasonably carried on, to hold that a distinction exists between goods in and out of possession of the vendor and that the seller only warrants the title to such goods as those which he is in possession of. This implied warranty of a title free from incumbrances is expressly declared, however, by the statute above noted, not to arise where the charge or incumbrance is declared or known to the buyer before or at the time when the contract or sale is made. Whether the plaintiff had knowledge of the attachments in the case at bar presented an issue of fact. If the jury find for the plaintiff upon this issue, another issue of fact then will be presented, namely, the amount of plaintiff's damage.

It was error, therefore, to direct a verdict for the defendant. It follows that the determination appealed from and the judgment of the City Court should be reversed and a new trial granted, with costs to the appellant in all courts to abide the event.

CLARKE, P. J., MERRELL, MARTIN and BURR, JJ., concur.

Determination of Appellate Term and judgment of the City Court reversed and new trial ordered, with costs to appellant in all courts to abide the event.