**MOORE v. SCOTT STAMP & COIN CO., Inc.**

**No. 41, Docket 21417.**

United States Court of Appeals
Second Circuit.

Argued Oct. 6, 1949.

Decided Dec. 1, 1949.

4

Thayer & Gilbert, New York City, for plaintiff, appellee and appellant; Phil E. Gilbert, Jr., and Harold A. Segall, New York City, of counsel.

Before L. HAND, SWAN and CLARK, Circuit Judges.

SWAN, Circuit Judge.

These appeals bring up for review a judgment entered upon the verdict of a jury in an action to recover the agreed price of Chinese postage stamps purchased by the plaintiff in China at the defendant's request and sent by registered mail addressed to the defendant. Federal jurisdiction rests on diversity of citizenship.

The complaint, as originally filed, contained a single cause of action. It alleged that Scott Stamp & Coin Co., Inc., whom we shall call the buyer, requested the plaintiff, whom we shall call the seller, to obtain in China certain Chinese stamps and agreed to pay him the cost of the stamps, plus 10% for his services, plus postage; that the seller mailed the specified stamps to the buyer in February 1944; that after their arrival in New York in March 1944, the buyer refused to accept them, and is indebted therefor to the seller in the sum of $3,151.89. The defendant's answer was a general denial. From correspondence introduced at the trial it appears that after the stamps arrived in New York they were held up by the customs officials who notified the buyer on March 28, 1944 that "These stamps will be held for the duration of the war, and may be claimed by you at that time." Thereafter the buyer wrote to the seller's agent on May 12, 1944: "As soon as the merchandise is released to us and in our possession, we shall make arrangement for its payment." This letter was made the basis of a second count added to the complaint by amendment during the trial. This count further alleged that the stamps were released and made available to the buyer in September 1946, but the said sum of $3,151.89 has remained unpaid, although demanded by the seller. Both counts were submitted to the jury with instructions that if they found for the seller on either cause of action they must find for the

Miller, Bretzfelder & Boardman, New York City, for defendant, appellant and appellee; Bertram Boardman, New York City, of counsel.

buyer on the other. The jury brought in a verdict for the plaintiff on the second cause of action, and their silence as to the first was taken by the court as a verdict for the defendant on that count. Judgment was entered accordingly, and both parties have appealed. Upon the defendant's appeal the errors assigned are denial of its motions to dismiss the complaint or direct a verdict and the refusal to give certain requested instructions. The plaintiff has taken a cross-appeal merely to protect his rights in case the judgment in his favor should be reversed. He contends that his motion for a directed verdict should have been granted.

■ The seller's shipment of the stamps in February 1944 was an acceptance of the buyer's offer and created a unilateral contract which obligated the buyer to pay in accordance with the terms of the contract. Since all communications between the parties were by letters, we think that the meaning of the contract should have been determined by the court rather than the jury.[1] If the correspondence prior to shipment of the stamps meant that the obligation of the buyer to pay became fixed when the stamps were shipped, a verdict should have been directed for the seller. On the other hand, if, as we believe, the contract should be interpreted to mean that the buyer's obligation to pay was conditioned on receipt of the stamps by the buyer within a reasonable time after shipment, a verdict should have been directed for the buyer on the cause of action originally alleged.

■ But such condition was modified by the letter of May 12th upon which the amendment of the complaint was based. The buyer then knew that the stamps would be held by the customs officials until the end of the war, unless someone could obtain an earlier release of them, and it expressly agreed to accept and pay for them at that time. The seller made unsuccessful efforts to obtain their earlier release. The buyer, as consignee of merchandise, made entry of it on March 2, 1944 but did nothing further to obtain possession of the stamps until it wrote to the Bureau of Customs in December 1948 in preparation for the trial of this action. The proof showed that the stamps were available for release to the buyer on September 3, 1946. By a letter of that date the Bureau of Customs so informed the seller, but there is no evidence that he passed on the information to the buyer. On September 11, 1946 the seller wrote demanding payment. The buyer's reply on the 13th stated that it was no longer interested in getting the stamps as it had obtained large quantities from other sources. But this repudiation of the contract cannot aid the buyer, since there was uncontradicted testimony by Mr. Pollock of the Bureau of Customs that only the buyer, as consignee and importer of the stamps, could obtain their release from the Bureau. Hence the condition of the buyer's promise to pay "as soon as the merchandise is released to us and in our possession" was a condition which could only be performed by it, and it cannot escape from its obligation by its own failure to perform the condition.[2]

■ The buyer erroneously argues that there was no consideration to support the promise of payment contained in its letter of May 12th. It has overlooked N. Y. Personal Property Law, McK.Consol.Laws, c. 41, § 33(2) which makes consideration unnecessary when a contract is modified by an agreement in writing.[3]

---

1. See Williston, Contracts, 3rd Ed., § 616; Dwight v. Germania Life Ins. Co., 103 N.Y. 341, 353, 8 N.E. 654, 57 Am. Rep. 729; Brady v. Cassidy, 104 N.Y. 147, 155, 10 N.E. 131.

   In the case at bar the jury was instructed that "it is your interpretation of those letters upon which you are to decide this case."

2. Williston, Contracts, 3rd Ed. §§ 677, 1293A; A.L.I. Restatement, Contracts, § 295.

3. "An agreement * * * to change or modify * * * any contract * * * shall not be invalid because of the absence of consideration, provided that the agreement * * * shall be in writing and signed by the party against whom

None of the refused instructions requires discussion. In our opinion the court should have directed a verdict on the second count. Since submission to the jury produced such a verdict, the judgment is affirmed.

it is sought to enforce the change, modification or discharge". See Jaeger v. Canter, 13 N.Y.S.2d 414; Spector v. National Cellulose Corp., 181 Misc. 465, 48

N.Y.S.2d 234, affirmed 267 App.Div. 870, 47 N.Y.S.2d 311.